Johnson SCOTT, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–2950.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1985.

Decided July 22, 1985.

Rehearing and Rehearing En Banc Denied Oct. 10, 1985.

Jan L. Kodner, Chicago, Ill., for plaintiff-appellant.

Jeffrey Teske, Asst. Regional Counsel, Dept. of Health and Human Services, Chicago, Ill., for defendant-appellee.

Before BAUER and WOOD, Circuit Judges, and FAIRCHILD, Senior Judge.

BAUER, Circuit Judge.

This is an appeal from an order of the district court affirming the Secretary of Health and Human Services's (Secretary) reversal of the Administrative Law Judge's (ALJ) grant of disability benefits to plaintiff. We reverse and remand for reinstatement of the ALJ's award of disability benefits to the plaintiff.

## I.

Plaintiff, a 54-year-old functionally illiterate male with a fourth grade education, worked as a shipping and receiving clerk for the Rotary Paper Manufacturing Company for ten years between 1969 and 1979 until he dislocated his right arm in September 1979. Plaintiff's primary duty at Rotary was to load and unload trucks and to sometimes drive a fork lift. Plaintiff testified that his work required him to stand and walk most of the time and to sit occasionally. Tr. 32. Plaintiff testified that his job required frequent bending and reaching. Plaintiff was sometimes required to lift rolls of paper in excess of 50 pounds and to push objects weighing between 250 and 500 pounds. Plaintiff's job required only physical labor and no inventory or other tasks which his illiteracy would make impossible. Prior to his employment at Rotary, plaintiff was employed steadily as a shipping and receiving clerk for other companies. Since the dislocation of his

arm, plaintiff has subsisted on general assistance of $144 per month and food stamps. Plaintiff is divorced and lives alone in a second floor apartment on Chicago's south side.

In December 1981, and August 1982, plaintiff filed applications for disability insurance and Supplemental Security Income (SSI) benefits, describing his disability as high blood pressure, a heart condition and an inability to use his right arm. The Social Security Administration denied both of plaintiff's applications in decisions dated April 14, 1982, and November 30, 1982, and also denied plaintiff's request for reconsideration on March 10, 1983. Plaintiff timely requested and received a hearing before the ALJ on July 14, 1983.

At his hearing plaintiff testified that he is able to stand only 10–15 minutes before experiencing problems with his legs. Tr. 34–5. He gets pains in his chest and sides and cannot walk more than ½ block. Tr. 34, 132. He can climb only ½ flight of stairs before needing to stop. Tr. 35. He gets chest pains and headaches from sitting or lying down for a long time. Tr. 35. The chest pains linger, like a "pin sticking in [his] chest." Tr. 46. Plaintiff is able to lift 5–10 pounds, but if he tries to lift more, his arms and legs give out. He has problems raising his right knee and right arm. Tr. 36, 37. Plaintiff also suffers from dizziness and severe headaches, which wake him in the night, his head "busting open." Tr. 37, 45. The headaches occur every day. Tr. 45.

Plaintiff used to take walks for recreation, but had to give these up in October 1983 because his legs would give out. Tr. 39–40. He had exercised his arm by squeezing a ball in his hand but gave it up because "it hurt me so bad." Tr. 50. Plaintiff's daughter comes weekly to clean and cook for him and to drive him to the grocery store. He waits in the car while she shops, however, because he cannot walk the entire trip through the store. Tr. 39, 48, 127. Plaintiff testified that he goes with his daughter just to get out of the house. Tr. 25.

Between 1977 and 1983 five doctors treated plaintiff, or reviewed his records. The reports of these doctors were admitted into evidence by the ALJ and considered by him in making his decision. Six reports from Dr. Rubio, plaintiff's treating physician, were admitted into evidence, dating from June 1977 to June 24, 1983. One report from Dr. Carasig dated March 17, 1982, was admitted into evidence. A report from Grant Hospital, where plaintiff was hospitalized for severe cluster headaches and anemia, dated July 1982 also was admitted. Dr. Panopio, who performed a consultative examination of the plaintiff at the request of the Administration on November 19, 1982, also submitted a report taken into evidence. Finally, a report by Dr. John A. Wyness, who never treated or examined the plaintiff, but who reviewed the medical evidence on January 20, 1983, also was admitted into evidence.

All of the physicians examining the plaintiff concurred in finding that from at least May 1979, plaintiff suffered from uncontrolled hypertension, despite medication. Plaintiff's blood pressure during this period ranged from 110/80 to 180/120. Doctors Rubio, Carasig and Panopio noted the plaintiff's complaints of chest pains. Dr. Rubio noted in June 1983, that plaintiff suffered from coronary insufficiency and that the chest pain was cardiac related, and as early as 1977 had diagnosed plaintiff as having coronary artery disease, cardiomegaly and an abnormal EKG. Grant Hospital and Dr. Panopio in March and November of 1982 also found plaintiff to have abnormal EKGs. Dr. Rubio found in January 1982 that the chest pain was precipitated by walking and could be eased by rest. Dr. Rubio did not, however, report that plaintiff was suffering chest pains in August or October 1982 when he was contacted by phone by an Administration adjudicator. The absence of chest pain may have been due to plaintiff's hospitalization at this time for cluster headaches and anemia.

Doctors Rubio, Carasig, and Panopio all identified plaintiff's arm and shoulder problems. In June 1983, Dr. Rubio noted that

plaintiff had a history of shoulder dislocation beginning at least in May 1979, when he was hospitalized for pain in his shoulder and arms. The reports indicate that one arm was tender during this hospitalization. X-rays, tonograms and bone scans indicated greater tuberosity of the humerus, sclerosis and dense, increased bone activity. A gallium scan, however, revealed no abnormality in the region. Tr. 182–193. Dr. Rubio did not find evidence of a limitation of limb movement due to the pain.

Both Drs. Carasig and Panopio found plaintiff's limb movement limited. Dr. Carasig found that plaintiff suffered from degenerative osteoarthritis and had a reduced grip strength in his right arm. Dr. Panopio found that plaintiff's right shoulder and arm had a slightly limited range of motion forward to 120 degrees and back to 20 degrees. Dr. Panopio also found in November 1982 that plaintiff had a mild limp which slightly restricted his ability to walk and a slight lateral deviation of 5 degrees in the right leg. In January 1982 and again in June 1983, Dr. Rubio by contrast, found that plaintiff had a normal gait.

Dr. Wyness did not examine the plaintiff, but based on his review of plaintiff's medical record, found that plaintiff suffered from hypertension, chest pain due to coronary insufficiency, back pain and headaches. Dr. Wyness concluded, however, that plaintiff retained the ability occasionally to lift and carry 50 pounds, frequently lift and carry 25 pounds, do an unlimited amount of pushing, pulling, and reaching, and a limited but frequent amount of climbing, stooping, balancing, kneeling, crouching, and crawling. He also found that the plaintiff could stand or walk a total of 6 hours a day.

The ALJ considered the evidence presented through the testimony and exhibits and made the following findings.

> The medical evidence establishes that the Claimant has coronary artery disease, severe hypertension, osteoarthritis of the right shoulder and the right knee....

> Claimant's testimony regarding functional restrictions of his right shoulder and right knee is supported by the medical evidence of record and is therefore generally credible....

> The Claimant has the residual functional capacity to perform the physical exertion requirements of work except for standing and walking for prolonged periods of time, bending, stooping, squatting or lifting more than ten pounds frequently, or 20 pounds occasionally.

The ALJ concluded that the plaintiff was unable to perform his past work as a shipping clerk, classified as "medium" work, but that he could do "light" work. After considering vocational factors, however, the ALJ found that the regulations required that petitioner be found to have been disabled since November 4, 1982.

On December 8, 1983, the Appeals Council on its own motion reviewed the ALJ's decision under 20 C.F.R. §§ 404.970(a)(3) & 416.1470(a)(3), which provide that a case will be reviewed if the findings or conclusions of the ALJ are "not supported by substantial evidence." The Appeals Council reviewed the entire record and found:

> The claimant has the following impairments: hypertension, chest pain, degenerative arthritis of the right shoulder and right knee.

> The claimant is not engaging in substantial gainful activity.

> The claimant has a severe impairment.

> The claimant's impairment is not of the severity to meet or equal the Listings.

> The claimant has the residual functional capacity to perform work-related functions except for work involving lifting more than 25 pounds frequently or 50 pounds occasionally.

> The claimant's past relevant work as a shipping and receiving clerk did not exceed the above limitations.

> The claimant's allegation of severe and disabling pain is not credible in view of the medical documentation.

The Appeals Council concluded therefore that the petitioner had never been disabled.

Plaintiff sought review in the district court. The district court granted the Secretary's motion for summary judgment, holding that the Secretary's findings were supported by substantial evidence. Plaintiff appealed the district court's affirmance of the Secretary's denial of benefits to this court.

## II.

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairments which can be expected to result either in death or last for at least twelve months. 42 U.S.C. § 1382c, 1614(a)(3)(A). A finding of disability is necessary for a claimant to receive disability insurance benefits under the Act. 42 U.S.C. § 423(1)(D). The Secretary has established a five step regulatory scheme to guide disability evaluations. The regulations are written as if the applicant were being addressed:

(b) *If you are working.* If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

(c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience....

(d) *When your impairment meets or equals a listed impairment in Appendix 1.* If you have an impairment which meets the duration requirement and is listed in Appendix 1, or we determine that the impairment is equal to one of the listed impairments, we will find you disabled without considering your age, education, and work experience.

(e) *Your impairment must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment, we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) *Your impairment must prevent you from doing any other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment, we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. 404.1520(b)–(f)(1).

When disability claimants fall into the fifth category, 20 C.F.R. § 404.1520(f), the ALJ is instructed to use "Grids" provided in the regulations to determine whether work exists in the national economy in significant numbers for the claimant, given his "vocational factors," i.e., his age, education, work experience, and residual functional capacity. The use of a particular grid is determined by the type of work the ALJ determines a particular claimant can perform. The regulations define "light" and "medium" work, for instance, as follows:

Light work involves lifting no more than 20 lbs. at a time with frequent lifting or carrying of objects weighing up to 10 lbs. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities....

Medium work involves lifting no more than 50 lbs. at a time with frequent lifting or carrying of objects weighing up to 25 lbs. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(b), (c), & 416.967(b), (c).

The Secretary has provided that the ALJ makes the initial disability determination following the five-step evaluation process and the application of the grids. Two regulations address the Appeals Council's authority to review the ALJ's initial decision:

*Appeals Council initiates review.* Anytime within sixty days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address.

20 C.F.R. § 404.969.

The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

20 C.F.R. § 404.970(a).

In the instant case, the ALJ found that the plaintiff could perform only light work, applied the light work grid, Appendix 2 of Subpart P, Rules 202.09, Grid 202.09, and found plaintiff "disabled." Had the ALJ found plaintiff able to do medium work, the medium work grid, Grid 203.11, would have directed a finding of "not disabled." The difference arises in the application of the vocational factors in each grid.

The Appeals Council exercised its authority to review the ALJ's determination that plaintiff was disabled. The Appeals Council held that the ALJ's decision was unsupported by substantial evidence. 20 C.F.R. § 404.970(a)(3). The Appeals Council determined that the evidence presented indicated that plaintiff had the capacity to do medium work. Finding also that plaintiff's past work had been medium work, the Appeals

Council found that plaintiff fell into category four, 20 C.F.R. § 404.1520(e): he could still perform his past work. The Appeals Council found, therefore, that plaintiff was not disabled.

## IV.

The Secretary argues that it is our duty to review her final decision only, without regard to the earlier decision of the ALJ. 42 U.S.C. § 405(g); *Bibbs v. Secretary of Health, Education & Welfare,* 626 F.2d 526, 527 (7th Cir.1980).

The statute authorizes the Secretary, not the ALJ, to make reviewable final decisions in disability cases. The Secretary has chosen to act through the Appeals Council, and therefore it is the Council's decision that must be deferred to by the courts if substantial evidence exists to support it, whatever the result might have been if the courts were reviewing the ALJ's decision directly.

*Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984). The Secretary's analysis is correct insofar as it goes, but it misses a critical initial step. We must first determine whether the Appeals Council had authority to conduct review of the ALJ's decision on its own motion.

This circuit has not yet had an occasion to consider the Appeals Council's authority to review an ALJ's decision under section 404.970(a). Every social security disability case appealed to this court in the recent past arose from a denial of benefits by the ALJ, followed by an affirmance of the denial or a refusal to further review the case by the Appeals Council. Whether this court affirmed that initial denial, *see, e.g., Stephens v. Heckler,* 766 F.2d 284 (7th Cir.1985); *Zalewski v. Heckler,* 760 F.2d 160 (7th Cir.1985); *Strunk v. Heckler,* 732 F.2d 1357 (7th Cir.1984); *Wallaschlaeger v. Schweiker,* 705 F.2d 191 (7th Cir.1983); *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982); *Bibbs v. Sec'y of HEW,* 626 F.2d 526 (7th Cir.1980); *McNeil v. Califano,* 614 F.2d 142 (7th Cir.1980); *Cheers v. Sec'y of HEW,* 610 F.2d 463 (7th Cir.1979), remanded for further findings,

*see, e.g., Halvorsen v. Heckler,* 743 F.2d 1221 (7th Cir.1984); *Garfield v. Schweiker,* 732 F.2d 605 (7th Cir.1984); *Zblewski v. Schweiker,* 732 F.2d 75 (7th Cir.1984), or reversed the denial of benefits, *see, e.g., Taylor v. Schweiker,* 739 F.2d 1240 (7th Cir.1984); *Whitney v. Schweiker,* 695 F.2d 784 (7th Cir.1982); *Carver v. Harris,* 634 F.2d 363 (7th Cir.1980), no case required a consideration of the Appeals Council's decision to exercise own motion review, because the Appeals Council had not exercised its authority to review the ALJ's grant of benefits. Whatever the cause of this new factual pattern, we have before us a case of first impression in this circuit, which requires us to construe the Appeals Council's regulatory authority to conduct own motion review of ALJ decisions.

The Sixth Circuit has considered the regulations for review, *see* 20 C.F.R. § 404.-970(a), and held that the Appeals Council does not have "unbridled discretion to reverse the determination made by the administrative law judge." *Newsome v. Secretary,* 753 F.2d 44, 46 (6th Cir.1985). *See also Parris v. Heckler,* 733 F.2d 324, 325 (4th Cir.1984). The Sixth Circuit reviewed the four rationales for review noted at 20 C.F.R. § 404.970(a), and held that "[u]nless one of these four grounds is present, the Appeals Council has no authority to review the decision of the administrative law judge." *Newsome v. Secretary,* 753 F.2d at 46. The Sixth Circuit reasoned that the task of the reviewing appellate court is not merely to determine whether the Appeals Council correctly named the standard of review it was applying to initiate its own review, *see Parris v. Heckler,* 733 F.2d at 325, but to determine whether, where the Appeals Council relied on a "not supported by substantial evidence" standard, the Council was "correct in concluding that the decision of the administrative law judge is unsupported by substantial evidence." *Newsome,* 753 F.2d at 46. *But see Baker v. Heckler,* 730 F.2d 1147 (8th Cir.1984) (Council must be deferred to whatever the court would have done if reviewing the ALJ decision directly.); *White v. Schweiker,* 725 F.2d 91 (10th Cir.1984) (Council may

substitute its judgment for the ALJ and federal court has no power to review).

In *Newsome,* the court held that the administrative law judge's decision was supported by substantial evidence. Therefore, "the Appeals Council had no authority to review the decision. Because the Appeals Council's error was an error of law, we are not bound by the 'substantial evidence' rule of 42 U.S.C. § 405(g)." *Id.* at 47. The *Newsome* court therefore reversed with instructions to remand for an award of benefits.

We find the Sixth Circuit's analysis convincing. The *Newsome* analysis gives meaning and effect to 20 C.F.R. § 404.-970(a). We think we have an obligation to determine whether the own motion review conducted by the Appeals Council was in fact justified under the standard by which the Council justified it in theory. To rule otherwise would be to render the hearing before the ALJ essentially without effect, subject to the unbridled de novo review of the Appeals Council.

Defendant relies on Section 404.969 in arguing that the language of that section provides that the "Secretary *may* review any case," including a decision that it determines meets one of the conditions in section 404.970. Even if we believed that the regulations give the Appeals Council carte blanche authority to review all decisions of an ALJ, which we do not, defendant's argument remains inadequate. Once the Appeals Council announces a reliance on one of the conditions of Section 404.970(a), the proper application of that condition is a matter for our review.

The obligation of an agency to follow its own regulations is the primary building block of administrative law:

> When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed.... For once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules. If an agency

in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand. *Black v. ICC,* 737 F.2d 643, 652 n. 3 (7th Cir.1984) (*quoting Pacific Molasses Co. v. FTC,* 356 F.2d 386, 389–90 (5th Cir.1966) (citations omitted)). *See also Bartholomew v. United States,* 740 F.2d 526 (7th Cir.1984) ("[a]n executive agency must be rigorously held to the standards by which it professes its action to be judged"). *Id.* at 530, *quoting Vitarelli v. Seaton,* 359 U.S. 535, 546, 79 S.Ct. 968, 976, 3 L.Ed.2d 1012 (1959) (Frankfurter, J., concurring in part and dissenting in part)); *Cummins v. Schweiker,* 670 F.2d 81, 83 (7th Cir.1982) (regulations promulgated by Secretary under his broad authority are "binding criteria."). Defendant argues that Section 205(g), which states that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive," requires us to look only at the Appeals Council decision, but that argument is unpersuasive. If the Secretary did not follow her own procedures in initiating review, her findings are based on an error of law and not due the deference mandated by Section 205(g). *See Newsome,* 753 F.2d at 47. *Cf. Black,* 737 F.2d at 652 n. 3. We think that the conditions of Section 404.-970(a) are meant to be more than mere boilerplate language providing, by their mere incantation, automatic entry for the Appeals Council to the review of any case. When the Secretary fails to exercise properly her authority to review, as she did in this case, then it is the ALJ's decision and not the Appeals Council's, which constitutes the Secretary's final decision for purposes of our review. *See* 42 U.S.C. § 205(g).

We must therefore determine as a threshold matter whether the Secretary's decision to conduct own motion review based on the condition that the ALJ award was not supported by substantial evidence was correct. Substantial evidence has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rich-ardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Allen v. Weinberger,* 552 F.2d 781, 704 (7th Cir.1977). Substantial evidence may be "something less than the weight of the evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–21, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966).

The ALJ, as this court has consistently required, offered a minimum level of articulation as to his assessment of the evidence in this case, and gave reasons for rejecting particular evidence. *Stephens,* 766 F.2d at 287, 290–291 (majority opinion & Flaum, J., concurring); *Zalewski,* 760 F.2d at 166–67; *Zblewski,* 732 F.2d at 79. This aids us in our review of whether the ALJ's decision was supported by substantial evidence. In this case, four examining physicians found that plaintiff suffers from severe hypertension and coronary artery disease. The evidence also substantiated that the plaintiff has had osteoarthritis of the right shoulder since 1979. While the evidence differed as to the range of movement limitation caused by the osteoarthritis, the ALJ acknowledged the nature of this evidence. Plaintiff's treating physician found on October 8, 1982, that hypertension and osteoarthritis would prevent lifting twenty-five to fifty pounds frequently, but that plaintiff's range of motion as well as his ability to walk or stand were not limited.

Plaintiff testified, however, that late in October he became unable to walk for prolonged periods. As of November 1982, the ALJ found that the testimony of the plaintiff as to his inability to walk due to a knee impairment and his heart condition was substantiated by the consultative physician who found that the plaintiff had a limping gait, a lateral deviation of the right leg, restricted arm movement, and hypertension. Recently this circuit has acknowledged the importance of the diagnosis of a consultative physician: "[a] consulting physician may bring both impartiality and expertise.... [A] physician who specializes in diseases of [a certain type] may contrib-

ute more knowledge to the administrative process after a one-hour examination than the general practitioner ... contributes after years on the case." *Stephens v. Heckler,* 766 F.2d 284 at 289 (7th Cir.1985). How the differing reports of the various types of physicians "weigh in a particular case is a question for the Secretary's delegate," of course, as the court in *Stephens* also noted, at 289 but it is clear in this case that the ALJ's reliance on the consultative physician report was reasonable. This is especially true given that the consultative physician in this case personally examined the plaintiff. *See Stephens v. Heckler,* 766 F.2d 284 at 291 (7th Cir. 1985) (Flaum, J., concurring).

Only the physician who did not examine plaintiff found that the plaintiff was capable of performing his past work despite acknowledged ailments. Such conclusions by physicians who never examined the plaintiff "deserve little weight in the overall evaluation of disability." *Carver v. Harris,* 634 F.2d 363, 364 (7th Cir.1980) (*quoting Allen v. Weinberger,* 552 F.2d 781 (7th Cir.1977)). *See also Whitney v. Schweiker,* 695 F.2d 784, 789 (7th Cir.1982). While the other physicians differed as to the extent of the impact of plaintiff's ailments, the cumulative impact of their numerous examinations of plaintiff over time, all of which noted the same recurrent problems, are entitled to more weight than that of a physician who only examined the plaintiff's records. The record before the ALJ, therefore, constituted more than substantial evidence to support the ALJ's finding of disability in this case. *Cf. Dressel v. Califano,* 558 F.2d 504 (8th Cir.1977). It was therefore error for the Appeals Council to review the ALJ's decision pursuant to 20 C.F.R. § 404.970(a).

In conclusion then, for the reasons stated above, the decision of the district court is reversed and the case is remanded with instructions to remand to the Secretary for an award of benefits.

REVERSED AND REMANDED.