Salvatore CULLOTTA, Plaintiff,

v.

Otis BOWEN, Secretary of Health and Human Services, Defendant.

No. 86 C 4340.

United States District Court, N.D. Illinois, E.D.

May 11, 1987.

Mark S. Schaffner, Potter & Schaffner, Chicago, Ill., Randall J. Zromkoski, Blachly, Tabor, Bozik & Hartman, Valparaiso, Ind., for plaintiff.

Linda Wawzenski, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Salvatore Cullotta ("Cullotta") seeks judicial review of a final decision by the Secretary of Health and Human Services ("Secretary") denying Cullotta's claim for disability insurance and supplemental security income benefits. Cullotta applied for benefits under Social Security Act ("Act") §§ 216(i), 223 and 1602, 42 U.S.C. §§ 416(i), 423 and 1381a,[1] claiming he had become disabled February 23, 1979. After a September 9, 1985 hearing (the "Hearing"), Administrative Law Judge ("ALJ") John Evans denied Cullotta's application January 30, 1986. Cullotta then exhausted his administrative remedies in proper sequence and brought this action against Secretary under Section 405(g).

As invariably occurs in these actions, which come to this Court on the administrative record and a decision by Secretary, the parties have filed cross-motions for summary judgment. Unless some special reason

---

1. All further citations to provisions of the Act will take the form "Section—," referring to the Title 42 numbering rather than to the Act's internal numbering. Regulations drawn from 20 C.F.R. will be cited "Reg. § —" or "Rule—."

calls for different treatment, this Court always gives the claimant the first and last word on the issues. Inexplicably here (in light of the strong points made in Secretary's responsive memorandum) Cullotta's counsel opted to waive the filing of a reply memorandum (the scheduled last word). For the reasons stated in this memorandum opinion and order, Cullotta's motion is denied and Secretary's is granted.

### Facts

Cullotta, who was 41 at the time of the Hearing, has an eighth grade education, but his ability to read and write is apparently limited (R. 216).[2] From 1965 until 1979 he worked for a poultry company, loading and driving their delivery trucks. That job required him to lift boxes weighing as much as 85 pounds and involved considerable standing and bending, as well as calling for the use of his legs to operate the footpedals on the trucks (R. 53–55). Cullotta stopped working February 23, 1979 because of his "back condition," headaches, numbness in his legs and blackouts (R. 326).

Although the record is not wholly clear, Cullotta apparently first injured his back in an automobile accident in 1976. That condition was aggravated by two more automobile accidents in 1977 (R. 456) and when he attempted to lift a box at work in 1978 (R. 55).[3] According to Cullotta's treating physician Dr. Sheldon Schwartz, Cullotta has been hospitalized three times because of his back pain and has tried various combinations of drugs and physical therapy to relieve his pain (R. 456–57). During his 1979 hospital stay, myelography and epidural venography were performed on Cullotta.[4] Because the latter procedure was "suggestive of disc herniation," Dr. Oscar Sugar decided surgery was appropriate (R. 150). During the surgery Dr. Sugar found no disc herniation but did try to correct several compressed nerve roots (R. 182).

Cullotta claims that surgery and Dr. Schwartz's later non-surgical attempts to alleviate his back pain have been unsuccessful (R. 72). In February 1980 (shortly after his surgery) Cullotta first applied for disability benefits, listing "back and leg problems" as the cause of his inability to work (R. 98). After an initial denial of benefits, Cullotta asked and received a hearing. At that March 3, 1981 hearing, ALJ Larry Miller found Cullotta suffered from back pain caused by spinal stenosis and radiculopathy and was unable to perform his former work as a truck driver.[5] However, ALJ Miller found Cullotta was still able to perform light work and was therefore not disabled (R. 213–20). That decision became final after the Appeals Council declined Cullotta's request for a review. Cullotta did not seek judicial review of that final decision.

Cullotta again applied for disability benefits December 15, 1981, claiming the same impairments (R. 226). That application too was initially denied. Again Cullotta asked for a hearing. ALJ Dale Garwal conducted the hearing September 19, 1983 and affirmed the denial of benefits on February 5, 1984 because he found Cullotta retained the capacity to perform sedentary work (R.

---

2. Although Cullotta claimed at one point he could not read or write, he later testified some reading and writing was necessary for his job. His ex-wife said he could read *T.V. Guide* but not a novel (R. 216–19).

3. At the Hearing Cullotta did not even mention the auto accident, and one consulting physician's report mentions only the lifting incident as the source of Cullotta's problems (R. 469). Cullotta's treating physician's report does not mention the lifting incident. Another consulting physician's report says the lifting incident happened in 1982 (R. 463).

4. Every federal judge, given the volume of social security disability litigation in the District Courts and the usual nature of litigants' presentations (which typically present a battery of medical terms without defining them), needs a medical dictionary just as much as *Black's Law Dictionary*. In layman's terms, myelography and epidural venography are specialized types of x-rays using injected contrasting material.

5. ALJ opinions (perhaps inevitably, in light of the problems they treat) also tend to be chock full of medical terminology (see n. 4). Unfortunately, the mere use of that terminology too frequently takes the place of real analysis.

314–19).[6] Once again the Appeals Council declined Cullotta's request for review (it ruled June 6, 1984), and once again he did not seek judicial review.

Undaunted, on September 28, 1984 Cullotta applied for benefits a third (and most recent) time, claiming back pain, leg pain and "bad headaches" that sometimes cause him to pass out (R. 326). At the Hearing before ALJ Evans (following the denial of benefits), Cullotta testified:

1. His condition prevents him from sitting in one place for more than 20–35 minutes, from standing for more than 40 minutes and from walking more than one block (R. 60–61, 64).

2. He often has headaches but had not passed out for two to three months (R. 59, 62).

3. He walks with a cane and often needs assistance in dressing and bathing himself (R. 64, 70).

4. He does no work around the house because of his pain and his tendency to drop things when his hands become numb (R. 67–68).

5. His pain is "strong enough to draw tears to [his] eyes" (R. 69).

6. He believes he could not work for an eight-hour day because his condition often forces him to lie down to relieve his pain (R. 71).

In support of his application Cullotta submitted the medical evidence that had already been examined and evaluated by ALJs Miller and Garwal, an updated report from Dr. Schwartz and a report from Dr. Marvin Gold. ALJ Evans also obtained a residual functional capacity ("RFC") assessment of Cullotta prepared by Dr. Vidya Madala and a report from neurological surgeon Dr. Jonas Byla.

Dr. Schwartz reported Cullotta suffers from a real "physical ailment" that causes him a great deal of pain (R. 459). He found Cullotta's range of motion in his lumbosacral spine significantly reduced and said Cullotta "cannot lift, bend or carry object [more than] 20 lbs" (R. 450). But he also said Cullotta can walk unassisted (R. 449).

Dr. Gold, a specialist in fractures and orthopedic surgery, examined Cullotta December 12, 1985 and found him to be "significantly impaired with a failed back syndrome. He has neurological impairment." Dr. Gold was the first physician to find evidence of carpal tunnel syndrome and "pseudarthrosis of an attempted fusion procedure." He opined Cullotta's ability to sit, walk, stand or lift is extremely limited (R. 469–70).

Dr. Byla, who had examined Cullotta only two months before Dr. Gold, submitted strikingly different findings. Although Dr. Byla believed Cullotta was in fact in pain, he could detect no "neurological objective findings" to support Cullotta's claims. Dr. Byla pointed to several inconsistencies in Cullotta's complaints and noted Cullotta refused to walk without a cane and "refused to move in any direction because of alleged pain." Dr. Byla put no limitations on Cullotta's ability to work (R. 463–66).

Dr. Madala's RFC assessment is dated February 5, 1985, at least six months before the other medical reports. Dr. Madala thus based his assessment on the medical evidence submitted by Cullotta in support of his earlier applications. He found Cullotta had a limited ability to lift up to 20 pounds and could stand or sit for six hours per eight-hour workday. Dr. Madala believed Cullotta had the ability to climb, stoop or kneel occasionally (R. 451).[7]

*Applying the Statutory Framework*

To establish entitlement to disability and supplemental security income benefits, a claimant must show he or she is "disabled." Sections 416(i)(1) and 423(d) define "disability" as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental im-

---

6. ALJ Garwal's decision relied in part on the preclusive effect of ALJ Miller's decision (R. 316).

7. That entire assessment is entirely consistent with ALJ Garwal's findings one year earlier based on the same evidence (see R. 319).

pairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months....[8]

Secretary has promulgated extensive procedural regulations for determining whether an applicant is disabled. *Garfield v. Schweiker*, 732 F.2d 605, 607 n. 2 (7th Cir.1984) summarizes Secretary's five-step test for determining "disability":

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1983).[9]

Once a claimant has demonstrated an impairment of sufficient severity to prevail at step 4, *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir.1984) teaches:

> The burden then shift[s] to the agency to show the claimant retained the residual functional capacity to perform other work in the national economy.[10]

At that fifth and final step Secretary must consider all the claimant's physical and mental impairments (Regs. §§ 404.-1561, 416.961), the claimant's age (Regs. §§ 404.1563, 416.963), education (Regs. §§ 404.1564, 416.964) and work experience (Regs. §§ 404.1565 and .1568, 416.965 and .968).[11] Toward that end the ALJ typically looks to the "Grid," medical-vocational guidelines (found at 20 C.F.R., Subpart P, Appendix 2) that balance the claimant's physical limitations against the other relevant factors (Regs. §§ 404.1569, 416.969). Before doing so the ALJ must determine what type of work a claimant is capable of performing in light of his or her impairments. Secretary's regulations define types of work using physical exertion criteria (Regs. §§ 404.1567, 416.967).[12] Alternatively the ALJ may base the step 5 determination on other evidence, including the assessment of a vocational specialist (Regs. §§ 404.1566(e), 416.966(e)).

In all events, Secretary's decision must be upheld unless (1) the findings are not supported by substantial evidence or (2) Secretary has applied incorrect legal standards (Sections 405(g) and 1383(c)(3)). *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938), has defined "substantial evidence" as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

### Secretary's Decision

ALJ Evans applied claim preclusion principles to Cullotta's claim of disability antedating ALJ Garwal's denial of Cullotta's second application.[13] He found Cullotta

---

**8.** Section 1382c(a)(3)(A)'s definition is essentially the same.

**9.** *Johnson v. Heckler*, 769 F.2d 1202, 1209–13 (7th Cir.1985) invalidated step 2 of Secretary's formulation. Since then the Supreme Court has found that step invalid in *Bowen v. Yuckert*, ___ U.S. ___, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). ALJ Evans did not use that step when evaluating Cullotta's alleged disability (R. 6), but that has made no difference in the ultimate outcome.

**10.** Sections 423(d)(2)(A) and 1382c(a)(3)(B) define "work which exists in the national economy" as "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." Secretary must ignore existing economic conditions

and actual hiring practices and focus solely on the claimant's physical and mental ability to perform jobs that exist in the national economy.

**11.** See Sections 423(d)(2)(A) and 1382c(a)(3)(B).

**12.** For example, Rule 201.25 of the Grid is the provision relevant to Cullotta's ability to perform sedentary work and the resulting conclusion he is not "disabled."

**13.** ALJ Evans actually spoke in terms of "res judicata." Because of the confusion sometimes caused by the various usages of that term (see *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)), this Court prefers the more precise label "claim preclusion"

was barred from another review of the evidence ALJ Farwal had already scrutinized and found wanting.[14] Accordingly, ALJ Evans limited his decision to evaluating whether Cullotta's additional evidence established he became disabled after ALJ Garwal's decision.[15]

ALJ Evans first distinguished between Cullotta's application for disability insurance benefits under Title II of the Act and for supplemental security income benefits under Title XVI. He found Cullotta had disability insured status under Title II only until September 30, 1984. Because Cullotta presented no evidence he became disabled between February 1984 and September 30, 1984, ALJ Miller denied the disability insurance benefits application (R. 7).

As for Cullotta's supplemental security income claim, ALJ Evans found, based on the medical evidence and Cullotta's testimony, Cullotta had not worked since 1979 and suffers from (R. 10):

> severe spinal stenosis and generalized hyporeflexia, low back pain and possible carpal-tunnel syndrome, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in [Reg. Subpart P, Appendix 1].

ALJ Evans proceeded to step 4 of the sequential analysis and reaffirmed ALJ Garwal's earlier finding that Cullotta's impairments prevented him from returning to his past work as a truck driver. ALJ Evans then found the medical evidence continued to support ALJ Garwal's earlier finding Cullotta was still capable of sedentary work. He found Cullotta's testimony to the contrary to be not credible (R. 9). Under the Grid that finding, along with the findings Cullotta was a younger individual with a limited education whose acquired skills are not transferable, directed a ruling that Cullotta was not disabled (see Rule 201.25).

Secretary's Appeals Council rejected Cullotta's request for its review of ALJ Evans' decision, which then became Secretary's final decision (R. 3). Cullotta now challenges that decision, targeting ALJ Evans' finding that Cullotta is still capable of performing sedentary work despite his subjective complaints of pain. In support of his position Cullotta points to all the evidence in the record, including that already considered and evaluated by ALJ Miller and ALJ Garwal.

Although Cullotta nowhere specifically addresses claim preclusion, the entire thrust of his memorandum in support of his motion obviously disputes its application to his claim. Because such applicability necessarily controls the scope of the other disputed issues, that question will be discussed before addressing ALJ Evans' evaluation of the medical evidence and Cullotta's subjective complaints of pain.

### Claim Preclusion

Section 405(h) gives Secretary the power to apply the principles of claim preclusion to his final decisions on the merits rendered after a hearing. As *Purter v. Heckler*, 771 F.2d 682, 691 (3d Cir.1985) points out, however, that power is not unlimited. Secretary's own regulations allow claim preclusion to bar a later claim for benefits only where (1) the same claimant has previously filed an application supported by the same facts and involving the same issues and (2) that prior application has resulted in a final determination because of administrative or

for what ALJ Evans applied here. See *Norals v. Schneider Bros., Inc.*, 651 F.Supp. 1324, 1326–27 (N.D.Ill.1987).

**14.** Because ALJ Garwal's decision was based in part on the preclusive effect of ALJ Miller's prior decision (see n. 6), ALJ Evans really gave preclusive effect to both prior denials of Cullotta's benefit applications.

**15.** At the hearing ALJ Evans suggested Cullotta was precluded from claiming disability before June 6, 1984, when the Appeals Council denied review of ALJ Garwal's February 5, 1984 decision (R. 48). Using June 6 rather than February 5 as the effective date of ALJ Garwal's decision would, however, be improper. After all, the Appeals Council made no factual findings as to Cullotta's condition (R. 324); it simply refused to review ALJ Garwal's findings. Accord, *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir.1985). That error was harmless, though, for Cullotta introduced no evidence supporting his claimed disability during that gap period.

judicial action (Reg. § 404.957(c)(1)). Even then, Secretary's regulations permit him to refuse to apply claim preclusion under certain circumstances: He can (*Purter*, 771 F.2d at 691–92) reopen a final determination if within four years "new and material evidence is furnished" (Reg. §§ 404.988(b), 404.989(a)(1)) or if "the evidence that was considered in making the determination or decision clearly shows on its face that an error was made" (Reg. §§ 404.988(b), 404.989(a)(3)).

Cullotta did not label his application as a petition to reopen Secretary's prior determinations. But the very fact he sought benefits beginning February 23, 1979 reflects an effort to review his earlier claims as well as to obtain benefits for any disabling condition that began after the dates of those decisions, see *Purter*, 771 F.2d at 695.[16] ALJ Evans also obviously treated Cullotta's application as a petition to reopen the prior determinations [17] and rejected that request because (R. 8):

> No new medical evidence has been submitted for the record; only copies of old records already adjudicated were included.

■ Any review by this Court or ALJ Evans' decision to apply claim preclusion to Cullotta's application raises an initial jurisdictional question. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) held Section 405(g) does not give a district court jurisdiction to review a denial of a petition to reopen a prior final decision when such a denial is made without a hearing. But ALJ Evans decided to apply claim preclusion only after the Hearing, making that decision part of his ruling on the merits of Cullotta's application for benefits. ALJ Evans did raise the question of claim

preclusion at the Hearing, but he reserved judgment on that score until after the Hearing and Cullotta's supplementary evidentiary submissions (R. 46–51).[18] Thus ALJ Evans' decision not to reexamine Secretary's prior decision, once it ripened into Secretary's decision, became part of a "final decision of the Secretary made after a hearing" on Cullotta's present application and hence subject to review under Section 405(g).[19]

■ ALJ Evans' decision not to reexamine Cullotta's earlier claims is fully supported by the evidence. Cullotta presented no new evidence of disability preceding ALJ Garwal's decision, nor was that decision "clearly [erroneous] on its face." At the Hearing Cullotta's ex-wife admitted he received a fair hearing from ALJ Garwal (R. 93), before whom Cullotta was represented by counsel. Cullotta has simply failed to make any showing supporting a reopening of Secretary's prior decisions.

Because ALJ Evans correctly refused to reexamine the previous decisions, Cullotta is barred by claim preclusion from arguing he was disabled before February 5, 1984.[20] Those earlier determinations also create a presumption Cullotta continues non-disabled. Cullotta had the burden of presenting new evidence showing he had become disabled since February 5, 1984 to rebut that presumption (*Lyle v. Secretary of Health and Human Services*, 700 F.2d 566, 568–69 (9th Cir.1983)).

As already noted, the only disputed issue as to Cullotta's claimed disability is ALJ Evans' finding that Cullotta remained able to do sedentary work. This opinion there-

---

**16.** At the Hearing Cullotta's attorney suggested the claimed February 23, 1979 onset date was a mistake, but Cullotta's memorandum here arguing for a reversal of ALJ Evans' decision points to medical evidence evaluated by ALJ Miller and ALJ Garwal. This Court will credit the date on Cullotta's application rather than his attorney's unsupported assertion at the Hearing.

**17.** ALJ Evans did not actually refer to it that way, but he considered the factors relevant to a petition to reopen, such as whether Cullotta had come forward with new evidence (see R. 8).

**18.** In fact, ALJ Evans questioned Cullotta and his ex-wife at the Hearing about the fairness of their earlier hearings (R. 93–95).

**19.** ALJ Evans' disposition of the prior decisions can be contrasted with that of ALJ Garwal, who expressly rejected Cullotta's request to reexamine the evidence considered by ALJ Miller and said he was doing so without a hearing (R. 316).

**20.** See n. 15.

fore turns to ALJ Evans' examination of Cullotta's new evidence on that issue.[21]

### Cullotta's Post-February 5, 1984 Capacity

Cullotta presented two types of evidence bearing on his ability to do sedentary work: (1) objective medical reports of his condition plus evaluations by Dr. Schwartz and Dr. Gold and (2) his own subjective testimony at that Hearing. ALJ Evans also considered the report by Dr. Byla.[22] Cullotta contends ALJ Evans improperly discounted Cullotta's own testimony and Dr. Gold's report, misrepresented Dr. Schwartz's report and relied disproportionately on Dr. Byla's findings. Under the standards for this Court's review, Cullotta must lose across the board.

### 1. Cullotta's Title II Claim

■ First of all, Cullotta's argument fails to address the separate status of his application for disability insurance. He does not dispute ALJ Evans' finding that he had coverage for such benefits only until September 30, 1984. That required him to prove disability arising before that date to obtain benefits under Title II of the Act. *Jeralds v. Richardson*, 445 F.2d 36, 38 (7th Cir.1971).

But Cullotta presented no evidence at all that he became unable to do sedentary work after February 5, 1984 and before September 30, 1984. All the relevant medical reports were based on examinations after September 30, 1984, and none said Cullotta had become disabled before that date. Even Cullotta did not testify as to

any specific evidence supporting his claimed inability to do work before September 30, 1984.

Cullotta thus failed to rebut the presumption created by Secretary's prior decisions. ALJ Evans correctly found Cullotta had failed to establish his disability before the expiration of his insured status under Title II. All that remains is to determine whether the denial of supplemental security income benefits under Title XVI was supported by substantial evidence.

### 2. Objective Medical Evidence

■ Objective medical evidence was relevant to ALJ Evans' decision in two ways:

1. Such evidence was necessary to show an objective basis for Cullotta's subjective complaints of pain.

2. Objective medical evidence could directly support Cullotta's claim that he was unable to perform sedentary work after February 1984.

This opinion will deal with the second factor now, leaving the first for later.

Secretary's regulations define sedentary work as (Reg. §§ 416.967(a)):

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

---

**21.** Any references to "new evidence" in the claim-preclusion context should not be misunderstood as raising an impenetrable barrier between previously-considered evidence—found insufficient as of an earlier date—and newly-tendered evidence of the claimant's condition during the now-relevant period. It might be possible for such new evidence to cast light on the significance of older material, calling for reexamination of the latter. One obvious example might be an x-ray considered in the course of an earlier denial of benefits, but requiring reevaluation in the light of new evidence on a current application. This point is only cautionary, however, because nothing of that nature is involved here.

**22.** Dr. Madala's assessment of Cullotta's physical capacity (R. 451) and the testimony of Cullotta's ex-wife (with whom he still lives) were also part of the record (R. 81–93). ALJ Evans did not discuss that evidence, and neither party objects to that omission. In any event, Dr. Madala's assessment was based on evidence evaluated by ALJ Garwal and was therefore properly omitted from consideration. As for Cullotta's ex-wife, her testimony was merely corroborative of Cullotta's. ALJ Evans' adverse evaluation of Cullotta's credibility implicitly rejected the ex-wife's testimony as well.

Each of Drs. Byla, Gold and Schwartz submitted a report assessing Cullotta's ability to do certain types of physical activities. Unfortunately they reached widely varying conclusions, thus imposing on ALJ Evans the difficult task of resolving the conflict. Under the Act that was his and not this Court's job (*Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985)). Instead, this Court's role is to determine whether (1) ALJ Evans considered all the relevant medical evidence and (2) his resolution of conflicting factual matters is supported by substantial evidence (*Delgado v. Bowen*, 782 F.2d 79, 82–83 (7th Cir.1986)).

Initially Cullotta argues ALJ Evans somehow misrepresented Dr. Schwartz's report. ALJ Evans cited that report in support of his own conclusion that Cullotta was still capable of doing sedentary work. True enough, Dr. Schwartz reported Cullotta's range of motion in his lower spine was restricted and his ability to bend, lift or carry objects weighing more than 25 pounds was therefore restricted (R. 450). But he did not put any restrictions on Cullotta's ability to sit, walk or use his hands. Those findings fully support ALJ Evans' conclusion Cullotta can do sedentary work.

It makes no difference that Dr. Schwartz obviously feels Cullotta is "disabled." That represents a *legal* conclusion Dr. Schwartz is really not qualified to make (*Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir.1985)).[23] What was relevant for ALJ Evans, the individual charged with that determination, was Dr. Schwartz's evaluation of Cullotta's physical capabilities in light of his impairments. On that score, Dr. Schwartz's report does support ALJ Evans' conclusion.

Next Cullotta argues Dr. Schwartz's status as treating physician gave his opinion (as to Cullotta's disabling pain) greater weight than ALJ Evans accorded it. For that proposition Cullotta cites *Whitney v. Schweiker*, 695 F.2d 784 (7th Cir.1982) and *Allen v. Weinberger*, 552 F.2d 781 (7th Cir.1977).

Our Court of Appeals has sent mixed signals as to who should prevail in a war of the medical experts (contrast *Scott v. Heckler*, 768 F.2d 172, 180 (7th Cir.1985), with *Garrison*, 765 F.2d at 713). It must be recognized, however, that the primacy sometimes accorded the views of treating physicians is usually by comparison with those of "experts" who rely on their evaluation of the observations of others, rather than (as here) making professional judgments from their own examinations of the claimants. In any case, Dr. Schwartz's opinion was substantially undercut by the examination-based opinion of Dr. Byla—a neurological surgeon with special expertise as to the disabling effect of impairments such as those claimed by Cullotta. Although Dr. Byla believed Cullotta's expression of pain, he could find no objective basis for that pain and noted Cullotta was generally uncooperative during the examination. Dr. Byla therefore put *no* restrictions on Cullotta's physical capabilities.[24]

As *Garrison*, 765 F.2d at 713 explains, although *Allen* and *Whitney* reject a consulting physician's unfounded speculation or mere unsupported contradiction of the treating physician, the rule is very different when the consultant is a specialist who offers "new information or perspectives." Dr. Byla's report provided ALJ Evans exactly that: It gave detailed reasons for Dr. Byla's findings and noted the contradictions in Cullotta's complaints.[25] ALJ Ev-

---

**23.** That is particularly true in this case, for Dr. Schwartz's conclusion is really based on his belief in Cullotta's credibility and not on objective medical evidence. In fact Dr. Schwartz incorrectly claimed Cullotta's "positive myelographic findings" supported his claimed severe pain (R. 459). Dr. Sugar, who performed the myelography, reported it "revealed no evidence of any disc herniation or any nerve root compression" (R. 191).

**24.** ALJ Evans' overall treatment of Dr. Byla's report refutes Cullotta's assertion that the ALJ gave that report disproportionate weight. ALJ Evans did not credit Dr. Byla's conclusion that Cullotta was not at all impaired. Instead the ALJ affirmed ALJ Garwal's finding that Cullotta was restricted to sedentary work.

**25.** For example, Dr. Byla noted that although Cullotta insisted his impairment was limited to his left leg, he exhibited no reflexes in *both* ankles (R. 464).

ans could properly decide (as he did) to give greater weight to Dr. Byla's expert unbiased opinion than to what Dr. Schwartz concluded.[26] As in *Stephens,* 766 F.2d at 287–89, that decision was for the ALJ to make and is supported by substantial evidence.[27]

Finally Cullotta urges ALJ Evans also gave insufficient weight to Dr. Gold's report. Again the ALJ was entitled to choose among the conflicting medical reports, and he gave ample reasons for favoring Dr. Byla's report over that of Dr. Gold (R. 8–9). As ALJ Evans explained, Dr. Gold (a doctor chosen by Cullotta) found several impairments not mentioned by Dr. Byla or Dr. Schwartz. Those findings however were not accompanied by objective evidence such as x-rays. Dr. Gold noted Cullotta had "neurological impairment" (R. 470), but it is Dr. Byla and not Dr. Gold who is a neurological specialist. ALJ Evans' decision to discount Dr. Gold's report is also supported by substantial evidence.

In sum, this Court may not properly second-guess ALJ Evans' resolution of the conflicts in the medical opinions. Once that resolution is accepted (as it must be), the ALJ's determination left Cullotta's own testimony as the only evidence supporting his claim.

*Cullotta's Complaints of Pain*

■ ALJ Evans found (R. 10):

The medical evidence does not support claimant's allegations of severe pain. They do support his allegations of reduced exertional ability based on his back impairments.

If read in isolation, that finding might suggest ALJ Evans' possible application of an improper standard in evaluating Cullotta's subjective complaints of pain. Section 423(d)(5)(A) requires that such complaints be accompanied by objective evidence of a medical impairment that could reasonably be expected to produce the alleged pain (Reg. § 416.929).[28] However, an ALJ "may not disregard a claimant's subjective complaints [of pain] solely because the objective medical evidence does not *fully* support them" (*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984)). As interpreted by *Green v. Schweiker,* 749 F.2d 1066, 1070–71 (3d Cir.1984) all the statute requires is (*id.* at 1071):

objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself.

Cullotta's back impairment provided sufficient objective medical evidence to support his allegations of severe pain.

Even though a claimant's subjective complaints of pain are supported by evidence of a condition that could cause such pain, an ALJ is not compelled to find the claimant disabled. Section 423(d)(5)(A) also required ALJ Evans to determine whether Cullotta's level of pain prevented him from working (see *Foster v. Heckler,* 780 F.2d 1125, 1130 (4th Cir.1986)). That often calls for a credibility determination, and in this case ALJ Evans found:

[Cullotta's] complaints of disabling pain are not credible in light of the reports of his treating physician and [Dr. Byla].

26. *Stephens,* 766 F.2d at 289 made the obvious point that a treating physician may be biased because of his longstanding relationship with a patient and may find disability too quickly. That observation is certainly relevant here, where Dr. Schwartz's report is materially at variance with the facts in a number of respects—obviously reflecting great sympathy with his patient of long standing. That may be understandable, but an ALJ may properly ascribe lesser weight to an opinion of that nature.

27. Cullotta vigorously assailed Dr. Byla's credibility (R. 471–73) but offered little concrete evidence to support his criticism. Dr. Byla had no apparent reason for being biased against Cullot-

ta, and his report is complete and thoroughly explains his conclusions. Cullotta attempts to misrepresent Dr. Byla's genuine expression of sympathy for Cullotta as evidence of bias, but that is clearly incorrect (see R. 464). ALJ Evans was right to reject Cullotta's attack.

28. Section 1382c(a)(3)(H) applies the same standard to disability determinations affecting supplemental security income benefits. Congress so amended the statute October 9, 1984 by Pub.L. 98–460, applicable "to determinations made prior to January 1, 1987" (Pub.L. 98–460 § 3(a)(3)).

When the ALJ said Cullotta's complaints of severe pain were not supported by the medical evidence, he was necessarily referring to Cullotta's claim that he could not work because of his pain.

ALJ Evans' credibility determination is entitled to considerable weight (*Bibbs v. Secretary of Health, Education and Welfare*, 626 F.2d 526, 528 (7th Cir.1980)). That is especially true where (as here) an ALJ points to numerous reasons for believing the applicant's complaints exaggerated. Cullotta claimed he needed assistance dressing and bathing, but Dr. Schwartz's report did not mention such limitations. Nor did Dr. Schwartz mention Cullotta's alleged blackouts or problems with his hands, and none of the medical evidence suggested an objective basis for those claims.[29] Moreover, Dr. Byla's report specifically notes some of Cullotta's complaints are inconsistent.[30] Perhaps most importantly, although Cullotta insists on using a cane and would not walk without one for Dr. Byla (R. 464), Dr. Schwartz's report clearly reflects he can walk unassisted (R. 449).[31]

Thus both Dr. Schwartz and Dr. Byla directly contradict many of Cullotta's assertions. That is more than substantial evidence for rejecting Cullotta's subjective complaints of pain as a basis for his claimed disability.

### Conclusion

No dispute exists as to any material fact. ALJ Evans' finding that Cullotta is capable of performing sedentary work despite his impairments is supported by substantial evidence. That finding, when considered with ALJ Evans' other undisputed findings, directed a conclusion under Rule 201.25 of the Grid that Cullotta was not disabled.

Accordingly, substantial evidence also supports ALJ Evans' conclusions that Cullotta:

(1) was not entitled to disability insurance benefits because he was not disabled before September 30, 1984 and

(2) was not entitled to supplemental security income benefits because he was not disabled on January 30, 1986, the date of ALJ Evans' decision.

Secretary is entitled to a judgment as a matter of law. This action is dismissed.

---

**29.** Dr. Gold did diagnose carpal tunnel syndrome, but as ALJ Evans observed no objective evidence was offered to support that diagnosis.

**30.** See n. 25.

**31.** That flatly contradicts Cullotta's testimony that Dr. Schwartz told him to use a cane.