AMEIRA CORPORATION, d/b/a John's Curb Market, Plaintiff,

v.

Ann M. VENEMAN, Secretary of the United States Department of Agriculture, et al., Defendants.

United States of America, and Ann M. Veneman, Secretary of the United States Department of Agriculture, Third–Party Plaintiff,

v.

Lincoln Grove Grocery, Inc., Ameira Corporation, d/b/a/ John's Curb Market, Foode Rite Curb Market & Deli, and ISA ABU Zuaiter, Third–Party Defendants.

Ameira Corporation, d/b/a John's Curb Market, Plaintiff,

v.

United States of America, Defendant.

No. 1:01 CV 00673, 1:02 CV 00039.

United States District Court, M.D. North Carolina.

Nov. 26, 2004.

J. David James, Smith James Rowlett & Cohen, Greensboro, NC, for Ameira Corporation, dba John's Curb Market, plaintiffs.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for United States of America, defendant.

## ORDER

DIXON, United States Magistrate Judge.

This matter is before the court on Plaintiff's motion to compel discovery (docket no. 56) from Defendant United States. Defendant has responded in opposition to the motion, and Plaintiff has filed its reply brief. This matter is ripe for disposition. For the reasons which follow, the motion will be denied.

Plaintiff's complaint seeks judicial review of the Government's decision to disqualify Plaintiff from participation in the food stamp program administered by the Food and Nutrition Service of the Department of Agriculture. The Government disqualified Plaintiff based on allegations that Plaintiff had trafficked in food stamps. In this motion, Plaintiff seeks an order of the court that the Government produce a document identified as the Compliance Handbook, which was referred to in a deposition during the discovery period. According to Plaintiff's argument, the handbook sets out policies and guidelines concerning how investigations of possible food stamp violations are to be carried out and how investigators (and, as in this case, confidential informers) are to act. Plaintiff says that it needs the handbook to determine whether the investigation which led to Plaintiff's disqualification was conducted as required. More the point, Plaintiff contends that, based on deposition testimony of Billy Cooper, the investigator, the policies, guidelines, and restrictions of the handbook were not followed. The crux of Plaintiff's argument is that a governmental agency must follow its own rules, and if those rules are violated, "any action taken as a result ... cannot stand." Brief In Support, etc., p. 7.

■ The Government resists disclosure, arguing that the handbook (properly iden-

tified as FNS Handbook 317, Compliance Investigation Handbook (see docket no. 63 filed under seal)), is protected from disclosure under the qualified Government privilege not to disclose sensitive investigative techniques. Whether the Government's argument is correct or not, I believe that the handbook does not rise to the level of a rule or regulation of a Government agency as Plaintiff contends, and that therefore Plaintiff's argument in favor of disclosure misses the mark.

■ Judicial review of the Government's decision to disqualify Plaintiff is limited to determining whether a violation occurred and whether the administrative sanction is "arbitrary or capricious." *See Cross v. United States,* 512 F.2d 1212, 1217–18 (4th Cir.1975). "Due process on the issue of sanction requires that the punishment follow rationally from the facts, be authorized by the statute and regulations, and aim toward fulfillment of the Act's purpose." *Id.* When a Government agency does not follow its rules, regulations, or procedures, due process is violated and its action cannot stand. *See United States v. Heffner,* 420 F.2d 809, 811–12 (4th Cir.1969). *Heffner* followed the rule announced by the Supreme Court in *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 265, 74 S.Ct. 499, 98 L.Ed. 681 (1954), where the Court said that "regulations with the force and effect of law" serve to supplement the statutory framework, and when they prescribe a procedure to be followed by the agency, it must be followed. The purpose behind this rule is "to prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures." *Heffner,* 420 F.2d at 812.

■ No doubt it is this principle on which Plaintiff relies in seeking an order of the court to require the Government to turn over the handbook. This handbook, however, does not bear any of the hall-

marks of "regulations with the force and effect of law" which the Supreme Court addressed in *Accardi*. In the usual instance, an agency is bound by its regulations where notice has been given to those relying on those regulations. *See, e.g., Pacific Molasses Co. v. Fed'l Trade Comm.*, 356 F.2d 386, 389–90 (5th Cir. 1966) (noting that administrative agency must follow rules governing its proceeding which it promulgates, in part, because those appearing before it have a right to believe the agency would abide by its published statements that the rules would govern). The very nature of this handbook speaks loudly that there has been no public dissemination of it and that it is used internally as a guide for the agency's investigators. Nothing In the handbook suggests that it was promulgated under any process resembling regulations contained in the Code of Federal Regulations, the Federal Register, or any other compendium setting Government agency procedures. Moreover, this very request from Plaintiff shows that the handbook cannot have those due process trappings of "regulations with the force and effect of law." *Accardi*, 347 U.S. at 265, 74 S.Ct. 499.

A closer examination of these cases proves the point. In *Accardi*, the question was "whether the alleged conduct of the Attorney General deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto," *id.* at 265, 74 S.Ct. 499. The Court answered that "[i]n short, as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board [of Immigration Appeals] or dictate its decision in any manner" (for so doing violated the clear procedure set forth in the regulations), *id.* at 267, 74 S.Ct. 499. In *Pacific Molasses Co.*, the Fifth Circuit also discussed rules "promulgate[d]" [b]y an administrative agency

to govern its proceedings. 356 F.2d at 389–90. In so doing, the court of appeals cited *Accardi*, setting forth the proposition that "once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules." *Id.* at 389–90. Thus, the pattern of discussing "promulgated" "procedural rules" begins to emerge.

Even the cases that Plaintiff cites use the language of "promulgate" (or it's definition, "publish") and "procedural rules". *Morton v. Ruiz*, regarding an eligibility requirement used but not published by the Bureau of Indian Affairs (BIA), sets forth that "[i]n the area of Indian affairs, the Executive has long been empowered to promulgate rules and policies, and the power has been given explicitly to the Secretary and his delegates at the BIA." 415 U.S. 199, 231–32, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). The case goes on to discuss the "necessity of formally publishing ... substantive policies," 415 U.S. at 233, 94 S.Ct. 1055, and holds that eligibility requirements available in the BIA Manual but not published in the Code of Federal Regulations could not be enforced. *Id.* at 234–35, 236, 94 S.Ct. 1055 ("The conscious choice of the Secretary not to treat this extremely significant eligibility requirement affecting rights ... as a legislative-type rule, renders it ineffective so far as extinguishing rights ...."). Perhaps more obviously on point, *Scott v. Heckler*, 768 F.2d 172, 178–79 (7th Cir.1985), *rev'd on other grounds, Bauzo v. Bowen*, 803 F.2d 917 (7th Cir.1986), specifically articulates that "[w]hen an administrative agency promulgates the rules to govern its proceedings, these rules must be scrupulously observed." *Howard v. Heckler*, 661 F.Supp. 654, 656 (N.D.Ill.1986) merely quotes this language from *Scott*.

These cases, and the pertinent ones that they cite for similar propositions, discuss the necessity that agencies follow the rules and procedures which they have promulgated so that the public can rely on the process that is promised. *See, e. g., Pacific Molasses,* 356 F.2d at 390 ("Petitioners had a right to believe that the Commission would abide by its published statement that the old rules would govern all proceedings then in progress."). Such a concern is diametrically opposed to Plaintiff's claim in the case at hand: Plaintiff seeks to discover a handbook that is not available to the public at all, apparently to see if the agency followed procedures on which Plaintiff could not have relied. The very fact that Plaintiff does not have access to the manual proves that any procedures set forth therein have not been promulgated or published, and for this reason, the rationale of Plaintiff's argument is unavailing and does not support the discovery he seeks.

Accordingly, for all these reasons, Plaintiff's motion to compel discovery (docket no. 56) from Defendant United States is DENIED.