### Fannie BANKS, Plaintiff,

v.

### Otis BOWEN, Secretary of Health and Human Services, Defendant.

### No. 87C2584.

United States District Court, N.D. Illinois, E.D.

Oct. 14, 1987.

moment, that lies in the realm of uninformed speculation.

Jan L. Kodner, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty., Eileen Marutzsky, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Fannie Banks ("Banks") seeks judicial review of a final decision by the Secretary of Health and Human Services ("Secretary") denying Banks' claim—one based on an asserted disability beginning in December 1978—for disability insurance and supplemental security income ("SSI") benefits under Social Security Act ("Act") §§ 216(i), 223 and 1602, 42 U.S.C. §§ 416(i), 423 and 1381a.[1] After a May 7, 1986 hearing (the "Hearing"), Administrative Law Judge ("ALJ") Donald Niersbach denied Banks' application July 18, 1986. Banks then exhausted her administrative remedies in proper sequence and brought this action against Secretary under Section 405(g).

As invariably occurs in these actions, which come to this Court on the administrative record and a decision by Secretary, the parties have filed cross-motions for summary judgment. For the reasons stated in this memorandum opinion and order, both parties' motions for summary judgment are denied, and this case is remanded to Secretary for further proceedings consistent with this opinion.

### Facts

Banks, who was 57 years old at the time of the Hearing, has an eighth-grade education. She last worked as a drapery presser in 1978.[2] That job's physical requirements were the subject of contradictory evidence. Apparently Banks' work was limited to sliding drapes onto the pressing machine and using a button to lower the presser onto the drapery material (R. 12, 46–51).

Banks left her job in 1978 because she was laid off (R. 52), and she has not worked since then. On April 19, 1985 she applied for SSI and disability insurance benefits, claiming she had been disabled since December 1978 because of "arthritis in all joints, ulcer, HBP, bladder infection" (R. 112). Her applications were denied because the medical evidence assertedly showed she was still able to do her former work of pressing drapes (R. 126–28, 137). After those denials, Banks requested a hearing before an ALJ.

---

1. All further citations to provisions of the Act will take the form "Section—," referring to the Title 42 numbering rather than to the Act's internal numbering. Regulations drawn from 20 C.F.R. will be cited "Reg. § —" or "Rule—."

2. In her application Banks claimed she last worked in 1973 (R. 153). However, her earnings records indicated she worked until 1977 (R. 148). Then at the Hearing she insisted she worked until 1977 or 1978 (R. 46). ALJ Niersbach used the later date in his decision but noted the inconsistencies.

At the Hearing Banks was represented by counsel. She testified and her attorney presented oral argument. She claimed she cannot work because (R. 52):

I have too many aches and pains and swelling now.

When asked to be more specific, she claimed she had pain in her face, back, toes and shoulder as well as swollen knees. She takes medication to control her high blood pressure and water build-up, as well as for arthritis pain (R. 56–58). Sometimes she uses a walking stick (R. 59). She claimed she could sit or stand only for fifteen minutes at a time (R. 61), could walk only half a block (R. 62) and was able to lift only objects weighing less than 20 lbs. (R. 66).

In addition to Banks' testimony, ALJ Niersbach had before him the medical records from her several hospital stays and reports from her treating physician and consulting physicians. Given the nature of such cases as these, at least an outline of that medical evidence is necessary.

Banks was hospitalized for seven days in 1978 because of chest pains. At that time her EKG was normal (R. 202). She was admitted again in 1979 because of chest and back pain and in 1982 for back pain alone. On both occasions she was discharged the same day.

Dr. Chao Chen, Banks' treating physician from 1982 to the present, filled out a five-page form evaluating her medical condition (R. 168–72) and later completed a form for assessing an individual's ability to do work (R. 194–95). In addition Banks submitted another form prepared by Dr. Chen for the Illinois Department of Public Aid before her applications at issue here (R. 165–66).

In that earlier form Dr. Chen reported Banks was suffering from a urinary tract infection and arthritis. Because of those afflictions he believed Banks could not return to work, although he said she was still capable of performing "moderate physical activity" (R. 166).

Dr. Chen's later reports prepared for Secretary were similar. In one report he said Banks' only physical problem was arthritis in her back. That condition significantly reduced her range of motion. He reported no heart problems or chest pain and said she could walk without a cane. Her arthritis would make it hard for her to bend and could possibly affect sitting and standing (R. 172). Dr. Chen's second report to Secretary reflected Banks had arthritis in her "back, legs, knees, shoulder etc." (R. 194). That arthritis prevented her from standing or sitting more than one hour, walking more than two blocks and lifting more than 10 pounds. Dr. Chen opined that Banks was then disabled (R. 195).

Consulting physician Dr. N. Cay examined Banks May 21, 1985. Banks complained to him of pain in her knees, toes and back and blurred vision. Dr. Cay found a full range of motion in all Banks' joints, but x-rays showed signs of "slight to moderate degenerative arthritis of lumbosacral spine (R. 178).[3] Dr. Cay diagnosed arthritis of the knees and lower back (R. 176). He offered no opinion on Banks' ability to work. At that time Banks also received an eye examination, which revealed she had impaired vision that could be partially corrected with glasses (R. 173).[4]

Dr. John Wyness prepared a residual functional capacity assessment for Banks, based only on those reports. He found her physical capacity to do work was essentially unrestricted, except that her vision problem would prevent her from performing jobs requiring acute vision (R. 182).

---

**3.** Banks also had an abnormal EKG at that time. Despite that finding and her prior hospitalization for chest pain, none of the medical evidence suggests Banks had heart problems that might affect her physical capabilities. Banks herself claims no such impairment and Dr. Chen reported none (R. 169).

**4.** Banks did not list eye problems as one of her disabling impairments. Her complaint about blurred vision to Dr. Cay is the first indication of any such problem in the record. His following up on that complaint by having Banks' eyes tested is a commendable example of how such consultative examinations in particular, and disability determinations in general, should be conducted.

### Applying the Statutory Framework

To establish entitlement to disability and supplemental security income benefits, a claimant must show he or she is "disabled." Sections 416(i)(1) and 423(d) define "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months....[5]

Secretary has promulgated extensive procedural regulations for determining whether an applicant is disabled. *Garfield v. Schweiker*, 732 F.2d 605, 607 n. 2 (7th Cir.1984) summarizes Secretary's five-step test for determining "disability":

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1983).[6]

Once a claimant has demonstrated an impairment of sufficient severity to prevail at step 4, *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir.1984) teaches:

The burden then shift[s] to the agency to show the claimant retained the residual functional capacity to perform other work in the national economy.[7]

At that fifth and final step Secretary must consider all the claimant's physical and mental impairments (Regs. §§ 404.1561, 416.961), the claimant's age (Regs. §§ 404.1563, 416.963), education (Regs. §§ 404.1564, 416.964) and work experience (Regs. §§ 404.1565 and .1568, 416.965 and .968).[8] Toward that end the ALJ typically looks to the "Grid," medical-vocational guidelines (found at 20 C.F.R. Subpart P, Appendix 2) that balance the claimant's physical limitations against the other relevant factors (Regs. §§ 404.1569, 416.969).[9] Before doing so the ALJ must determine what type of work a claimant is capable of performing in light of his or her impairments. Secretary's regulations define types of work using physical exertion criteria (Regs. §§ 404.1567, 416.967). Alternatively the ALJ may base the step 5 determination on other evidence, including the assessment of a vocational specialist (Regs. §§ 404.1566(e), 416.966(e)).

In all events, Secretary's decision must be upheld unless (1) the findings are not supported by substantial evidence or (2) Secretary has applied incorrect legal standards (Sections 405(g) and 1383(c)(3)). *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938), has defined "substantial evidence" as:

---

5. Section 1382(c)(a)(3)(A)'s definition is essentially the same.

6. As of the date of the Hearing *Johnson v. Heckler*, 769 F.2d 1202, 1209–13 (7th Cir.1985) had invalidated step 2 of that formulation. ALJ Niersbach therefore did not use that step when evaluating Banks' alleged disability. Since then, however, *Bowen v. Yuckert*, —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) has upheld the validity of step 2, reversing an opinion by the Ninth Circuit that had reached the same result as *Johnson*. On June 16, 1987 the Supreme Court therefore vacated and remanded *Johnson* (—— U.S. ——, 107 S.Ct. 3202, 96 L.Ed.2d 690). Given the result in this opinion, the ALJ's prior handling of the step 2 issue is irrelevant.

7. Sections 423(d)(2)(A) and 1382c(a)(3)(B) define "work which exists in the national economy" as "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." Secretary must ignore existing economic conditions and actual hiring practices and focus solely on the claimant's physical and mental ability to perform jobs that exist in the national economy.

8. See Sections 423(d)(2)(A) and 1382c(a)(3)(B).

9. Because ALJ Niersbach found Banks was able to perform her past work at step 4, he did not need to go on to a step 5 finding. *Garfield*, 732 F.2d at 607 n. 2.

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

### Secretary's Decision

After explaining the five-step disability test, ALJ Niersbach proceeded with a thorough summary of the evidence. His summary was accompanied by several short comments evaluating the evidence:

1. He noted Banks' descriptions of her former work conflicted in several respects (R. 12)

2. He found (a) Dr. Chen's report to the Illinois Department of Public Aid contradicted itself by finding Banks capable of moderate physical activity but nonetheless disabled and (b) the report lacked objective findings to support Dr. Chen's conclusions (R. 12).

3. He pointed out Dr. Chen's and Dr. Wyness' evaluations of Banks' residual functional capacity were in direct conflict. He gave Dr. Wyness' report little weight because not that of an examining physician (R. 14).

ALJ Niersbach concluded Banks suffers from mild hypertension, decreased vision and arthritis of the back and knees.[10] Those impairments do not equal any of Secretary's listings (step 3). Although Banks' abilities are considerably minimized (R. 15), the ALJ found Banks' own subjective claims as to the extent of her disabilities are considerably exaggerated and are not supported by the objective medical evidence. He explained (R. 15):

> While the claimant is admittly [sic] of advanced age, the Administrative Law Judge must conclude on the basis of claimant's description of her previous job, the medical evidence and the general perceptions made at the hearing that claimant is able to perform her previous work as a drapery presser. The claimant described the work as requiring lifting only 5 to 10 pounds which in conjunction with the other requirements would appear to correspond to light work. The claimant's own physician felt claimant could perform moderate physical activity. Though we do not consider his opinion in this respect as warranting or finding that she can do moderate exertional level activities it indicates some remaining capacity. Accordingly, the claimant is determined to be able to perform her former light work and to be not disabled.

### Banks' Arguments

Banks now attacks several of the ALJ's findings. She argues:

1. ALJ Niersbach improperly discounted her subjective complaints of pain.

2. He failed to compare the actual requirements of her former work to her established limitations when making the step 4 determination.

3. He improperly discounted the reports of her treating physician.

4. He did not consider the combined effect of her impairments.

5. He abused his discretion by not ordering a follow-up x-ray of Banks' knees as requested at the Hearing.

Although several of Banks' arguments miss the mark, she hits the bull's eye at least twice. Her case must therefore be remanded to Secretary to correct those errors.[11]

---

**10.** No record evidence suggested Banks' high blood pressure affected her ability to work. Banks also claimed she was impaired because of an ulcer and a urinary tract infection. But except for a single mention of a urinary tract infection by Dr. Chen (R. 166) there was no evidence that either ailment affected her ability to work.

**11.** Neither Banks nor Secretary addresses another issue. Secretary's Appeals Council affirmed the ALJ's decision in all but one respect. Although the ALJ found Banks met the disability insured status requirements through the date of his decision, the Appeals Council reversed that finding, holding instead that Banks last met the requirement March 31, 1979 (R. 4). Because there was no evidence in the record supporting any disability by Banks before March 31, 1979 (despite her claim of disability beginning in December 1978), Banks would be ineligible for disability insurance benefits even if she is disabled (see *Cullotta v. Bowen,* 662 F.Supp. 1161, 1168 (N.D. Ill. 1987)). Nevertheless her claim for SSI benefits remains if the Appeals Council decision is correct.

### Banks' Credibility

In substantial part Banks sought to support her claim by her own Hearing testimony that she was unable to work because of pain in her knees, back and shoulder. Section 423(d)(5)(A) requires that such claims be accompanied by objective evidence of a medical impairment that could reasonably be expected to produce the alleged pain (Reg. § 416.929).[12] However, an ALJ "may not disregard a claimant's subjective complaints [of pain] solely because the objective medical evidence does not *fully* support them" (*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984)(emphasis added)). As interpreted by *Green v. Schweiker*, 749 F.2d 1066, 1070–71 (3d Cir. 1984), all the statute requires is this (*id.* at 1071):

> [W]hile there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself.

ALJ Niersbach correctly found the objective medical evidence fully supported Banks' claims of arthritis in her back and knees. That satisfied the statutory requirement of objective evidence, but Banks was not yet home free. Section 423(d)(5)(A) also required the ALJ to determine whether Banks' level of pain prevented her from working (see *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir.1986)). When a claimant's own evaluation of her pain is the issue, that calls for a credibility determination. In this case the ALJ found (R. 15):

> Claimant's credibility is particularly suspect with respect to the degree of pain and incapacity alleged because of what appears to be over exaggerated complaints which have no support in the record. Further, the claimant's demeanor and appearance at the hearing showed little or no limitation as was evidenced by

the bending incident which the Administrative Law Judge witnessed.[13]

ALJ Niersbach's credibility determination is entitled to considerable weight (*Bibbs v. Secretary of Health, Education and Welfare*, 626 F.2d 526, 528 (7th Cir. 1980)(per curiam)). As this Court said in *Cullotta v. Bowen*, 662 F.Supp. 1161, 1171 (N.D. Ill. 1987):

> That is especially true where (as here) an ALJ points to numerous reasons for believing the applicant's complaints exaggerated.

Banks' own estimate of her physical abilities falls far short of her physician's evaluation. Her complaints increased significantly when she was under questioning by her attorney, and indeed her claims were contradicted by her conduct at the Hearing.

Banks assails ALJ Niersbach's evaluation of her credibility in two respects:

1. He incorrectly evaluated her testimony regarding her medication.

2. He improperly applied "sit and squirm" findings in that evaluation.

Both attacks must be rejected.

Banks brought her medication with her to the Hearing (as the ALJ had asked). ALJ Niersbach examined the bottles, including their instructions and dates. He observed there were far more pills in the bottles than should have been there if Banks had been taking her medication as directed. Banks contradicted herself when the ALJ asked her if she was in fact taking her medication as directed (R. 58). Then, in what appeared an effort to rehabilitate her answer, she later testified (in response to her lawyer's question) that any discrepancy in the number of pills used was caused by the fact she refilled her prescription before she used up the existing supply (R. 105). What the ALJ inferred from all the evidence was that Banks was not taking her medication as directed, and that undercut her claims as to the extent of her pain.

---

12. Section 1382c(a)(3)(H) applies the same standard to disability determinations affecting SSI benefits. Congress so amended the statute October 9, 1984 by Pub. L. 98–460, applicable "to determinations made prior to January 1, 1987" (*id.* § 3(a)(3)).

13. [Footnote by this Court] That "bending incident" occurred while Banks was describing the pain in her feet. She bent over and touched her toes without being asked to do so (R. 91). Banks claimed it was painful for her to do that (R. 92).

■ That inference is entitled to the same deference as are the ALJ's factual findings (*Carqueville v. Flemming*, 263 F.2d 875, 877 (7th Cir.1959)), even though it may be a weak inference. Banks' own explanation for the discrepancy seems equally plausible. But this Court should not substitute its credibility judgment, based on a paper record, for that of the ALJ (who had the benefit of seeing Banks testify). More critically in "substantial evidence" terms, that item is only one of several reasons given by the ALJ for questioning Banks' credibility. She cannot undercut his ultimate conclusion by perhaps weakening only one of its supporting pillars.

Banks' criticism of ALJ Niersbach's "sit and squirm" findings also draws blood—but it is not fatal. Such findings are explained and criticized in *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)(per curiam):

> In this approach, an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied. As the court observed in *Tyler* [*v. Weinberger*, 409 F.Supp. 776, 789 (E.D. Va. 1976)], this approach
>
> > will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising the right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel.

■ True enough, some of the ALJ's questions and remarks at the Hearing were uncalled for and "smack of playing amateur doctor" (*Lundquist v. Heckler*, 670 F.Supp. 781, 785 (N.D. Ill.1985)). But much of what Banks objects to was quite proper: ALJ Niersbach's comparison of Banks' claims with what he observed at the Hearing (see *Freeman*, 681 F.2d at 731). It was Banks, after all, who claimed she had swollen knees, could sit for only 10 minutes at a time and had difficulty bending. Admittedly, the ALJ's observations alone would be insufficient to discredit her claims,[14] but they are certainly relevant.

■ Banks' testimony was, as her attorney admitted (R. 107), often inconsistent. Perhaps most significantly, her limitations greatly exceeded those reported by her own doctor. All in all, the ALJ could properly discount her credibility (as he did).

### *Step 4 Determination*

Banks' lack of credibility could not of itself defeat her claim, because there was also objective evidence in the record that supported her position. ALJ Niersbach could not ignore that evidence (see *Halvorsen v. Heckler*, 743 F.2d 1221, 1226–27 (7th Cir.1984)). He had to evaluate that evidence to determine what limitations her physical impairments put on her ability to work. Then he had to compare those limitations to the actual requirements of Banks' former work (*Cheshier v. Bowen*, 831 F.2d 687, 689 (7th Cir.1987), citing *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir.1984); see also *Pearson v. Bowen*, 648 F.Supp. 782, 791 (N.D. Ill.1986)). ALJ Niersbach failed on both counts.

### 1. *Banks' Former Work*

Initially the ALJ had to determine the specific physical requirements of Banks' former work as a drapery presser, a topic on which Banks herself was the only source of evidence. Her application included a description of her former job as requiring her to stand most of the day, to bend and reach constantly and to lift up to 30 pounds (R. 154). At the Hearing Banks contradicted that description somewhat, saying she was required to lift only 5–10 pounds at a time and adding that another

---

**14.** ALJ Niersbach's use of the bending incident (see n. 13) as a basis for not believing Banks *was* improper. Banks and Dr. Chen never claimed she was physically unable to bend—they simply said it was painful for her to do so (R. 69, 92, 195).

person hung the drapes after they were pressed.

ALJ Niersbach noted the discrepancy and apparently accepted her lower estimate of the weight she had to lift—but that discrepancy was not a reason to ignore her claim that her former job required constant standing, bending and reaching.[15] Though Banks did not mention the bending and reaching requirements at the Hearing, her silence does not contradict or supersede her earlier description.[16] ALJ Niersbach completely failed to include those requirements in his step 4 evaluation.

### 2. Banks' Former Work v. Her Physical Limitations

■ Indeed, ALJ Niersbach's step 4 evaluation appears to have ignored most of the specific requirements of Banks' former work. After he summarized the evidence as to those requirements, he concluded her work as a drapery presser "would be defined as light." Then he appeared to conclude that because Banks could still perform light work, she could necessarily still do her past relevant work. General classifications such as "light work" have no place in a step 4 determination, which requires a comparison of specific job requirements to specific physical limitations (*Pearson*, 648 F.Supp. at 791–92).[17]

■ It is impossible to tell whether the ALJ actually made such a comparison. His decision is extremely ambiguous. He does mention the lifting requirement of Banks' former job, but he is entirely silent as to the standing and bending requirements. Because her inability to perform those requirements was directly supported by objective evidence in the record, such silence cannot be ignored by this Court and requires a remand for the appropriate com-

parison (see *Williams v. Bowen*, 664 F.Supp. 1200, 1208–09 (N.D. Ill. 1987)).

### 3. Objective Medical Evidence: Banks' Treating Physician's Report

■ As this Court has already said, objective medical evidence in the record did support Banks' inability to stand and bend as required by her former job. True, there was other evidence pointing the other way, but the ALJ failed to explain why the favorable evidence was rejected and the unfavorable accepted. That error also requires a remand (*Burnett v. Bowen*, 830 F.2d 731, 736 (7th Cir.1987); *Halvorsen*, 743 F.2d at 1226–27)).

Only Drs. Chen and Wyness provided evidence as to the effect of Banks' impairments on her ability to work. Both Dr. Chen's reports said Banks was disabled, although the earlier one said she was still capable of moderate physical activity. His second report more specifically indicated Banks could stand for only one hour, lift no more than 10 pounds, and had only a limited ability to bend because of the arthritis in her back, knees and shoulder (R. 195). Dr. Wyness, who did not examine Banks, imposed no restrictions on her ability to lift, stand or bend.

ALJ Niersbach rejected Dr. Chen's earlier report because of its ambiguity and lack of objective findings (R. 12). He then adverted to the direct conflict between Dr. Chen's later assessment of Banks' ability to do work and that of Dr. Wyness, but he did not actually resolve that conflict.

What the ALJ did say was that Dr. Wyness' report would be given little weight because he did not actually examine Banks (R. 14). Yet it appears it was Dr. Chen's evaluation that was given little weight.

---

**15.** Banks testified she received a morning and afternoon break as well as time for lunch. Thus she was never standing for more than about two hours without a break (R. 51).

**16.** Her attorney did include the bending requirement in his closing remarks (R. 109).

**17.** *Cheshier,* 831 F.2d at 690 is not to the contrary. There the claimant argued he should have been found incapable of performing his past work

because a consulting physician determined he could only perform "light work." Because that general classification was all the ALJ had, he properly compared the requirements for light work with those of the claimant's former work when making the step 4 evaluation. In contrast, ALJ Niersbach had specific evaluations of Banks' residual functional capacity. He should have used those specifics when making the step 4 evaluation.

His findings that Banks could stand for only one hour and had only a limited ability to bend were not even mentioned when the ALJ made his findings as to Banks' residual functional capacity. That omission may be attributable to ALJ Niersbach's use of general classifications ("light work") instead of specifics when making the step 4 determination, but it is nonetheless inexcusable. If the ALJ rejected Dr. Chen's assessment by deciding Banks could stand and bend as required by her former work (as Dr. Wyness had found), the ALJ had to explain how he reached that conclusion. As explained in *Zblewski v. Schweiker,* 732 F.2d 75, 78–79 (7th Cir.1984):

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely helpful for the ALJ to articulate reasons (e.g., lack of credibility) for creating or rejecting particular sources of evidence. it is absolutely essential for meaningful appellate review.

Accord, *Burnett,* 830 F.2d at 734–35, 736.

▮▮▮▮ ALJ Niersbach did offer some explanation for his findings, but that explanation does not identify the substantial evidence necessary to support them. He said Dr. Chen's earlier statement (part of his report to the Illinois Department of Public Aid) that Banks was still capable of moderate physical activity contradicted his opinion that Banks was disabled.[18] ALJ Niersbach relied heavily on that prior finding in assessing Banks' ability to do her former work. That reliance is irrational and impermissible in two respects:

1. ALJ Niersbach *rejected* Dr. Chen's earlier report because it was unsupported by objective findings (R. 12). He cannot rationally reject the entire report for such a reason and then proceed to pick out one finding from that report to support his conclusion (at least not without some sort of explanation).

2. Such a general finding is simply not relevant to a step 4 determination. It cannot take the place of Dr. Chen's more specific findings, which are quite relevant to such a determination. Banks' ability to perform "moderate physical activity" does not directly support the conclusion that she can perform her past work.[19]

Banks' challenge to ALJ Niersbach's treatment of Dr. Chen's reports concentrates on the fact Dr. Chen was Banks' treating physician and believed she was disabled. She argues (1) his opinions should have been given substantial weight (see *Allen v. Weinberger,* 552 F.2d 781, 785–86 (7th Cir.1977)) and (2) the ALJ could not rationally favor Dr. Wyness' report over that of Dr. Chen.

▮▮▮ Secretary correctly counters there may be wholly legitimate reasons for discounting the findings of a treating physician (see *Cullotta,* 662 F.Supp. at 1169). Where Secretary errs is in insisting many of those reasons are present here. That argument ignores the need for the ALJ (not Secretary's lawyer) to state the reasons for rejecting Dr. Chen's findings (see *Burnett,* 830 F.2d at 736).[20] Secretary asks

---

18. Banks offers a plausible though not conclusive explanation for that apparent contradiction. Dr. Chen was offered a choice of three alternatives—"no," "moderate" or "heavy" physical activity capability—on the Illinois agency's form. Because Banks was not bedridden, the doctor checked "moderate" even though he believed she was unable to work. It is certainly true that the form leaves much to be desired: "No," "moderate" and "heavy" do not exhaust the universe, and it is surely troublesome to assume that anyone who does not fit a "no physical activity" category is capable of "moderate" activity in the normal sense of that word. That may indeed be why Dr. Chen did what he did, but other explanations are perhaps possible. ALJ

Niersbach was not *required* to draw the inference urged by Banks.

19. In fairness to the ALJ, he did not find Dr. Chen's statement meant Banks could perform "moderate work." It indicated only some remaining capacity (R. 15). But as Banks points out, an applicant need not be bedridden to be disabled. Disability determinations under the Act require a more precise examination of an applicant's ability to work. Simply finding an ability to do "moderate physical activity" or "some remaining capacity" begs the question.

20. In *Ward v. Heckler,* 786 F.2d 844 (8th Cir. 1986)(per curiam), relied on by Secretary, the

this Court to engage in pure speculation as to why ALJ Niersbach did what he did—something this Court will not and should not do (see *Williams*, 664 F.Supp. at 1207, citing *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir.1985) and *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam)). Such speculation would require this Court to weigh and assess the evidence, a role reserved for Secretary under the Act (see *Burnett*, 831 F.2d at 734; *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986) (per curiam)).[21]

### Combined Effect

Banks' argument as to ALJ Niersbach's failure to consider the combined effect of her impairments is curious. She is of course right in saying the ALJ had to consider the effect of all her established impairments on her ability to do her former work. But she cites *Johnson*, 769 F.2d at 1213 for that proposition. *Johnson* addressed the necessity of considering the combined effect of impairments during a step 2 inquiry, and Banks' attorney admitted at the Hearing that her impairments, even in combination, did not equal any of Secretary's listings (R. 36). Although ALJ Niersbach did commit several errors, he plainly considered the effect of all Banks' established impairments when making his step 4 determination. Instead, his errors were caused by how he factored those impairments into the step 4 calculus and by his failure to explain his result adequately.

### Failure To Order Further Examination

██ Banks specifically asked the ALJ to order another consultative examination to evaluate the impairment of her knees. Although there were no x-rays of Banks' knees in the record, both Drs. Chen and Cay believed she had arthritis in her knees. ALJ Niersbach accepted their findings on

that score, but the real issue was the extent of the impairment caused by the arthritis in her knees, not its existence. X-rays or other objective evidence from an additional examination of her knees might well have been extremely helpful toward reaching the disability decision (see *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)(per curiam)), and that would have furthered the ALJ's obligation to develop a complete record (see *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir.1981)(per curiam)).

In light of the remand required in any event, this Court need not now decide whether ALJ Niersbach's failure to order such an examination would of itself justify a remand. Remand is necessary because of other errors, and Secretary should order such an additional examination of Banks' knees before making a second disability determination.

### Conclusion

ALJ Niersbach failed properly to determine whether Banks can perform her past relevant work and to give an adequate explanation of several of his conclusions in the course of that determination. Accordingly this case is remanded to Secretary for (1) another evaluation of Banks' ability to perform her past relevant work, using proper legal standards, and (2) the preparation of an adequately explained decision of that evaluation.

ALJ actually discussed such valid reasons in his decision (*id.* at 846). That is not the case here.

21. To the extent *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir.1985) suggests such perusals of the record by the reviewing court are proper, this Court believes such a rule is not the law in this Circuit (see *Tom v. Heckler*, 779 F.2d 1250, 1257 (7th Cir.1985), citing Judge Flaum's concurrence in *Stephens* rather than the opinion of

the majority; see also *Bauzo v. Bowen*, 803 F.2d 917, 923, citing *Stephens* but not for that proposition). Significantly, our Court of Appeals' most recent treatment (*Burnett*, 831 F.2d at 734–35) is really at odds with the notion of such a search by the reviewing court—it properly insists that the ALJ do the job of identifying the predicate for his or her decision.