Carolyn A. **VALENCIA**, Plaintiff,

v.

Otis R. **BOWEN**, Secretary of Health & Human Services, Defendant.

No. 87 C 5688.

United States District Court, N.D. Illinois, E.D.

June 30, 1988.

Louisa P. Seston, Cook County Legal Assistance Foundation, Oak Park, Ill., for plaintiff.

Margaret Gordon, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

HOLDERMAN, District Judge:

On June 26, 1987 Carolyn Valencia brought this action for judicial review of a final decision by the Secretary of Health & Human Services ("the Secretary") that plaintiff was not entitled to Supplemental Security Income (SSI).

Before the court are the parties' cross-motions for summary judgment.

### Background Facts

On July 25, 1985 plaintiff filed an application for SSI. She alleged that she had been disabled since January 1, 1983 by high blood pressure, emphysema and scoliosis. Plaintiff's application was denied initially and upon reconsideration.

On May 22, 1986 an ALJ held a hearing on plaintiff's application. Plaintiff was not represented by an attorney. On July 29, 1986 the ALJ rendered his decision denying plaintiff benefits. On February 18, 1987 the Appeals Council declined review, making the ALJ's decision final.

### A. *The ALJ's Decision*

The ALJ found that plaintiff had scoliosis, emphysema and hypertension but that she had the residual functional capacity to perform light work. The ALJ found that plaintiff's testimony was not credible, as it contained "inconsistencies in the frequency of treatment and the quantity of cigarettes smoked." The ALJ found evidence of some back pain, but not sufficient evidence to substantiate a "markedly disabling" back condition. The ALJ noted that plaintiff had not exhibited signs of pain at the hearing.

The ALJ also found that plaintiff's description of her daily activities—e.g. driving a car, watching children, housecleaning, laundry, cooking and shopping—suggested that plaintiff could do light work. Specifically, the ALJ found that plaintiff could lift 20 pounds occasionally and could frequently lift and carry up to ten pounds.

The ALJ noted that plaintiff's 1) blood pressure was controlled by medication, 2) scoliosis gave her no difficulty in walking, 3) emphysema and bronchitis had not prevented her from smoking.

The ALJ then used the Medical–Vocational Guidelines ("the grid"), Appendix 2, Subpart P, Part 404, Chapter III, 20 C.F.R. §§ 200.00–204.00 (1987), and concluded that plaintiff was not disabled by her exertional impairments.

The ALJ also found that plaintiff's non-exertional impairments—i.e. her shortness of breath and her scoliosis-related pain—did not significantly limit her capacity to perform a full range of light work, though these impairments might restrict her from working in a highly polluted environment.

### B. *The Medical Evidence*

On May 5, 1985 Dr. Miller, plaintiff's treating doctor, gave a telephone report. Dr. Miller had last seen plaintiff on July 25, 1985. Dr. Miller diagnosed plaintiff with chronic bronchitis, emphysema, high blood pressure and low back pain secondary to scoliosis. Dr. Miller also stated that plaintiff had shortness of breath upon mild exertion and expiratory wheezing. As of July 1984, vent testing showed airway obstruction and hyperinflation. FEV–1 was 1.92 and MVV was 74. An April 1984 x-ray showed overexpansion of plaintiff's lungs.

In December 1984 plaintiff's blood pressure was 138/90. In January 1985 it was 150/80. In July 1985 it was 130/90. BUN was 12 and creatinine was 1.3 in 1983.

Dr. Miller noted no chest pain, a normal EKG and normal heart size.

Dr. Miller also stated that plaintiff had scoliosis but no arthritis or other joint pain.

On November 16, 1985, Dr. Miller completed an arthritic report on plaintiff. Dr. Miller wrote that plaintiff's scoliosis had given her chronic pain "for years". Dr. Miller noted that plaintiff's ambulation was normal. Finally, in response to a question about work-restrictions, Dr. Miller wrote that "pain is increased on exertion."

On August 16, 1985 a consultative internist, Dr. Chen, examined plaintiff. In the "history" section of his report, Dr. Chen

noted that plaintiff experienced back pain which was aggravated upon exertion. Dr. Chen noted that plaintiff had 1) a normal gait, 2) mild scoliosis extending from the dorsal spine to the upper lumbar spine and 3) normal range of motion in the cervical spine and lumbar spine.

Under the "impressions" section of his report, Dr. Chen wrote that plaintiff might have emphysema and she had "wheezing rales bilaterally." Dr. Chen also wrote that she had back pain and scoliosis, but no signs of nerve root compression.

In Dr. Chen's subsequent pulmonary function study, he noted plaintiff's pulmonary functioning, as measured before and after plaintiff used a bronchodilator. Before she used the bronchodilator, plaintiff's FVC was 1.80, her FEV-1 was 1.27, her FEF 25–75 was 0.73, her PEFR was 3.21 and her MVV was 63.7. After plaintiff used the bronchodilator, plaintiff's FVC was 1.85, her FEV-1 was 1.46, her FEF 25–75 was 1.17, her PEFR was 4.40 and her MVV was 65.4.

On May 15, 1986 Dr. Miller filled out a general medical report based on her examination of plaintiff that day. In the "history" section of that report, Dr. Miller wrote that plaintiff reported 1) low back pain for years, 2) right side pain, with radiation into the right leg, 3) shortness of breath on minimal exertion, 4) smoking 2–3 packs a day for 20 years, and 5) high blood pressure. Dr. Miller found 1) blood pressure of 140/90, 2) wheezing and 3) scoliosis.

Dr. Miller also wrote that plaintiff's August 1985 pulmonary function tests showed moderate airway obstruction with hypertension.

Dr. Miller's diagnosis remained the same: hypertension, chronic bronchitis, chronic obstructive pulmonary disease, emphysema, low back pain and scoliosis. Dr. Miller noted that plaintiff responded poorly to a bronchodilator and that she was short of breath on minimal exertion.

Dr. Miller recommended that plaintiff have a CT scan of the lumbosacral spine and noted that she had pain with sitting or standing for 1–2 hours.

## C. The Plaintiff's Testimony and Other Statements

On July 25, 1985 plaintiff wrote in a disability report that 1) she had lower back pain after "walking too much", 2) she could not "lift or mildly exert", 3) she had difficulty breathing when walking too much, climbing stairs or carrying things, and 4) due to her scoliosis, she frequently injured her joints. She also reported the following activities: 1) mopping once every two weeks, 2) cooking at most four times a week, 3) washing dishes four times a week, 4) doing laundry once a week, 5) grocery shopping (though she had the store deliver her purchases), 6) babysitting eight hours a day for three days a week and 7) driving, except on expressways.

A Social Security Administration interviewer, who interviewed plaintiff on July 25, 1985 noted that she expressed having some difficulty with sitting for 1¼ hours, that she shifted position several times during the interview, and that she had a little difficulty getting up.

On plaintiff's October 3, 1985 reconsideration disability report, she wrote that she could take care of herself, as long as she took things slowly. Plaintiff also wrote that when her scoliosis caused her to injure herself, she could be in bed for a week and could not lift objects or walk.

At the May 22, 1986 hearing, plaintiff testified that she lives with her two youngest children on the second floor of an apartment building owned by her oldest daughter. She does some light housekeeping but her youngest daughter does most of it. (A.R. 29). On approximately one day a week, she will cook for herself and her 27–year old son. Three times a week, plaintiff babysits for her three and one-half year old grandchild while her daughter sleeps. (A.R. 29). Sometimes "if she feels up to it" she drives her other grandchild to preschool, which is only a block away from home. She once tried walking her grandchild to preschool but found that, due to both pain and shortness of breath, that she could not keep up. She sometimes does laundry in the basement, but she cannot

carry the clothes up and down the stairs. When she does the grocery shopping, she does not carry the groceries. Plaintiff also testified that "at this time" she had reduced her smoking to one package of cigarettes a day, due to her participation in a "Quit Smoking Program." (A.R. 31). Plaintiff explained that she told Dr. Miller that she was now smoking a pack of cigarettes a day; plaintiff did not know why on May 15, 1986 Dr. Miller wrote that plaintiff "was smoking 2–3 packs a day for 20 years." (A.R. 92).

Plaintiff's daughter, Ms. Galles, also testified at the hearing. She lives in and owns plaintiff's building. Ms. Galles testified that her mother watches Ms. Galles' youngest child from noon until 4:00 or 4:30, when her husband gets home. (A.R. 36) If her husband is not home by 4:30, plaintiff will watch both grandchildren. (The five-year old returns from preschool at 4:00).

Ms. Galles also testified that plaintiff told her that she currently smoked about a pack of cigarettes a day. (A.R. 37–38). Once every two weeks, plaintiff cooks a "minimal" dinner for her daughter and grandchildren. (A.R. 41). Finally, Ms. Galles testified that her sister, who lives with plaintiff, does the housekeeping in plantiff's apartment.

## DISCUSSION

### A. *Standard of Review*

In reviewing the ALJ's decision, this court must accept the ALJ's findings if, taking the record as a whole, they are supported by substantial evidence. *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987).

The ALJ uses a five-step procedure for determining disability. 20 C.F.R. §§ 404.-1520, 416.920 (1987). Under this procedure, the claimant bears the initial burden of showing a severe impairment which prevents him from performing his past work. The burden then shifts to the Secretary to show that the claimant retains sufficient "residual functional capacity" to perform other work available in the national economy. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987).

In the present case, the ALJ found that plaintiff has several impairments: chronic bronchitis and emphysema, scoliosis and hypertension. (A.R. 13). The burden thus shifted to the Secretary to show that plaintiff could perform jobs that were available in the national economy. At this step (step 5) the ALJ found that plaintiff retained the residual functional capacity to perform light work. The ALJ then consulted the grid to determine, according to plaintiff's disability, age (50), education (eleven years) and work experience (none) (A.R. 13) that plaintiff was disabled. (A.R. 13). *See* Appendix 2, Subpart P, Part 404, Chapter III, 20 C.F.R. §§ 200.00–204.00 (1987).

Plaintiff argues that the ALJ 1) erroneously discredited her testimony, 2) erroneously found that she was capable of a full range of light work. This court will address each argument in turn.

### B. *Plaintiff's Credibility*

The ALJ found that plaintiff's testimony was not credible, citing inconsistencies in plaintiff's testimony concerning "the frequency of treatment and the quantity of cigarettes smoked." (A.R. 13) The ALJ also stated that plaintiff's "statement did not agree with the evidence." The ALJ also noted that 1) at the hearing plaintiff did not exhibit "signs that could be related to the subjective symptoms of pain," and 2) although plaintiff has some back pain, "the evidence does not substantiate a condition that was markedly disabling as alleged." The ALJ rejected plaintiff's testimony to the extent she claimed to be "disabled." (A.R. 13)

The ALJ's credibility determination is entitled to considerable weight. *Cheshier v. Bowen*, 831 F.2d 687, 690 (7th Cir. 1987), *quoting Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986). While the ALJ's stated reasons for rejecting plaintiff's testimony are weak, this court cannot say that

the ALJ erroneously discredited plaintiff's testimony.

The ALJ first stated that plaintiff's testimony contained "inconsistencies in the frequency of treatment and quantity of cigarettes smoked." After examining plaintiff's evidence, this court cannot find any inconsistencies "in the frequency of treatment."

The ALJ could, however, find plaintiff's statements about her smoking to be inconsistent. In Dr. Miller's May 15, 1986 report Dr. Miller wrote "smoking 2–3 packs/day x 20 years." At the May 22, 1986 hearing, plaintiff stated that she was down to one pack of cigarettes a day. Also at the hearing, plaintiff's daughter confirmed that plaintiff was then smoking only a pack a day. (A.R. 37, 38). Dr. Chen, after his August 16, 1985 examination of plaintiff, stated that plaintiff smoked one pack a day. When the ALJ asked plaintiff why Dr. Miller had written that plaintiff was smoking 2–3 packs of cigarettes a day, plaintiff stated (correctly) that Dr. Miller made this statement in the "history" section of her report. The ALJ nonetheless interpreted Dr. Miller's statement as referring to plaintiff's present smoking habit and therefore found it to be inconsistent with plaintiff's testimony at the hearing. While this court might have reached a different conclusion, the ALJ could find that the plaintiff's statements were inconsistent. *See Walker v. Bowen,* 834 F.2d 635, 641 (7th Cir.1987).

The ALJ could also rely upon plaintiff's failure to exhibit signs of pain at the hearing in finding that plaintiff was not credible. Plaintiff presented evidence that short periods of sitting would cause her pain (A.R. 65, 66). The hearing may have lasted long enough for plaintiff to experience pain. The ALJ could therefore properly note that plaintiff had not exhibited pain at the hearing. *Banks v. Bowen,* 672 F.Supp. 310, 317 (N.D.Ill.1987).

But plaintiff's lack of credibility does not alone defeat her claim. Instead, this court must determine whether, discounting plaintiff's testimony (to the extent that the ALJ did), substantial evidence supports the ALJ's conclusion that plaintiff is disabled.

### C. *The ALJ's Use of the Grid*

The ALJ used Rule 202.10 to determine that plaintiff is disabled. Table No. 2, Appendix 2, Subpart P, Part 404, Chapter III, 20 C.F.R. § 202.00 (1987). The ALJ's use of the grid is proper if 1) plaintiff's vocational factors and residual functional capacity correspond with the criteria of Rule 202.10. *See Heckler v. Campbell,* 461 U.S. 458, 467–8, 103 S.Ct. 1952, 1957–58, 76 L.Ed.2d 66 (1983); *Smith v. Schweiker,* 735 F.2d 267, 270 (7th Cir.1984) 2) plaintiff's nonexertional impairments do not substantially limit her abilities. *Walker v. Bowen,* 834 F.2d 635, 641 (7th Cir.1987).

The parties do not dispute that plaintiff satisfies the age, skill and education requirements of Rule 202.10. Plaintiff argues, however, that she cannot meet the exertional requirements of light work.

> The Social Security Regulations provide: Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

■ The ALJ's finding that plaintiff is exertionally capable of light work is not supported by substantial evidence. The ALJ based this finding on plaintiff's description of her daily activities. After examining the record, this court concludes that the ALJ misstated plaintiff's testimony as to her daily activities.

The ALJ summarized plaintiff's testimony as to her daily activities by stating that "she drives a car, watches children, cleans the house, does the laundry, cooking and shopping." The ALJ also stated that 1) "[d]uring the day (plaintiff) performs light

housework and cooks for her 27–year old son and herself," 2) plaintiff drives her five-year old grandson to preschool (A.R. 11–13).

The above statements do not accurately describe plaintiff's testimony. Plaintiff testified that about three days a week she babysits with her youngest grandchild while her daughter sleeps and before her son-in-law gets home. (A.R. 29). This amounts to about 4–5 hours per day. Moreover, the grandchild often takes a long nap with his mother during these hours.

Plaintiff testified that she cooks only once a week. (A.R. 29) Sometimes, "if she feels up to it," she drives her oldest grandchild to preschool. (A.R. 30). She does only light housekeeping; her youngest daughter does most of it. Plaintiff's daughter corroborated plaintiff's statements as to her daily activities. (A.R. 35–36, 41–42).

These activities do not show that plaintiff can satisfy the exertional requirements of light work. There is no evidence, for example, that plaintiff could frequently lift or carry objects weighing up to ten pounds and occasionally lift up to twenty pounds. Plaintiff consistently stated that she could not lift any objects. (A.R. 31, 58, 61) The medical evidence is unfortunately very general; no medical evidence addresses the question whether plaintiff has the strength and mobility necessary to frequently lift up to ten pounds and occasionally lift twenty pounds.[1]

Neither is there evidence that plaintiff's pain would not prevent her from performing a job which requires "a good deal of walking or standing." 20 C.F.R. § 404.1567(b).[2]

Even disregarding plaintiff's testimony (as the ALJ did) the evidence suggests a conclusion contrary to the one which the ALJ reached; the evidence suggests that plaintiff's pain prevents her from sustained walking. (A.R. 58, 66).

In the "history" section of Dr. Chen's August 16, 1985 report, he wrote that plaintiff complained of dyspnea after walking a short distance. (A.R. 74). Dr. Chen's statement that plaintiff's gait was normal and that she did not need assistance walking does not show that plaintiff can do "a good deal of walking or standing." Dr. Chen observed plaintiff only during his brief examination of her. Plaintiff's evidence suggests that her pain and breathing difficulties occur after she has walked a short distance. Dr. Chen did not observe plaintiff after she had walked a short distance.

Neither could the ALJ properly find that plaintiff's nonexertional breathing impairments do not substantially limit the employment opportunities otherwise available to her.[3]

Defendant argues that Dr. Miller's November 16, 1985 report (stating that plaintiff is functionally limited only by "pain increased on exertion") is reliable evidence that plaintiff's pulmonary impairments do not substantially limit her employment activities. This court does not agree.

Dr. Miller's November 16, 1985 report is an arthritic report; it does not attempt to discuss whether plaintiff's emphysema might limit her functioning. Dr. Miller's May 15, 1986 general medical report noted

---

1. The Social Security regulations state that, to be considered capable of performing a full or wide range of light work, a claimant must be able to do "substantially all of these activities," *i.e.* a good deal of walking and sitting and frequent lifting of objects weighing up to 10 pounds. The evidence does not show that plaintiff can perform substantially all of the lifting and walking activities described in 20 C.F.R. § 404.1567(b).

2. Defendant argues that the ALJ could rely upon a State Agency physician's report (at A.R. 53) in determining that plaintiff could perform light

work. Defendant argues that under *Fox v. Heckler*, 776 F.2d 738, 742 (7th Cir.1985) this report should be treated as expert opinion evidence. But the Seventh Circuit in *Fox* referred to medical reports which were "completed and signed in accordance with the Secretary's normal and usual procedures ..." The report cited by defendant, in contrast, is not signed and may not be a medical report at all.

3. The ALJ found that plaintiff's shortness of breath reduced but did not significantly compromise her capacity for a full range of light work.

that plaintiff became "short of breath on minimal exertion." (A.R. 95). Dr. Miller's evidence therefore does not suggest that plaintiff's breathing impairments would not significantly limit her employment opportunities. Neither does Dr. Chen's August 19, 1985 report, as Dr. Chen made this report before plaintiff's Pulmonary Function reports were completed and as Dr. Chen did not assess the severity of plaintiff's breathing difficulty. (A.R. 77).

Most importantly, plaintiff's pulmonary function test results[4] suggest that her breathing impairment (i.e. chronic obstructive pulmonary disease, emphysema, chronic bronchitis) may substantially limit her employment opportunities.[5] Plaintiff's August 1985 results showed that after a bronchodilator, her (1) FEV–1 was 1.46 or 55% and (2) MVV was 62% (A.R. 78). In May 1986 Dr. Miller analyzed the August 1985 results and stated that they showed "moderate airway obstruction with hyperinflation," that plaintiff showed "poor response to bronchodilator" and that she became "short of breath on minimal exertion." (A.R. 94, 95). Finally, a comparison of plaintiff's July 1984 pulmonary function tests with her August 1985 test results suggests that plaintiff's condition is deteriorating. (A.R. 72).

· In short, there is no evidence that plaintiff's poor pulmonary functioning would not substantially limit the employment opportunities available to her.[6] The burden was on the Secretary to produce such evidence.

The uncontradicted medical evidence showing shortness of breath on mild exertion and the fact that plaintiff's pulmonary function test results nearly satisfy Listing 3.02(A) suggest that plaintiff's condition probably would substantially limit her ability to perform a full range of light work.

This court concludes that there is not substantial evidence that 1) plaintiff is exertionally capable of light work as defined in 20 C.F.R. § 404.1567(d) and 2) plaintiff's nonexertional impairments do not significantly restrict her ability to perform the full range of light jobs.

■ It does not follow that this court must grant plaintiff's motion for reversal and award of benefits. A finding that the vocational guidelines are inapplicable is not determinative of the merits of plaintiff's case. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(d). *See Smith v. Schweiker*, 735 F.2d 267, 272 n. 4 (7th Cir.1984).

This court will remand to the Secretary for further development of the record on the question whether work exists in the national economy for an individual with plaintiff's limitations.

CONCLUSION

Plaintiff's motion for summary judgment is GRANTED. This case is remanded to the ALJ for further development of the record as to the questions 1) whether plaintiff is exertionally capable of light work and 2) whether plaintiff's nonexertional im-

---

**4.** Pulmonary function tests provide an objective measurement of pulmonary disability. FEV stands for "forced expiratory volume," and is the volume of air that a person can breathe out during a limited period, after taking a deep breath. FEV-1 is the volume of air exhaled in one second. *See Switzer v. Heckler*, 742 F.2d 382, 384 n. 3 (7th Cir.1984), *quoting 9 Am.Jur. Proof of Facts* 649 (1961) and D. Morton, *Medical Proof of Social Security Disability*, § 2.4 (1983). MVV stands for "Maximum Voluntary Ventilation," which is the maximum amount of air that a person can breathe in and out of the lungs in one minute.

**5.** It is undisputed that plaintiff's pulmonary function test results *do not satisfy* Listing 3.02(A).

**6.** Defendant argues that plaintiff's testimony about her daily activities and the medical evidence are reliable evidence from which the ALJ could infer that plaintiff's nonexertional impairments would not significantly restrict her ability to perform a full range of light work. This court does not agree.

Plaintiff's daily activities are not equivalent to light work. No medical evidence describes how plaintiff's condition might limit her functioning. And no vocational evidence describes how plaintiff's condition might limit her employment opportunities. As defendant concedes, the ALJ could not rely upon the vocational assessment at p. 89 of the administrative record, as this assessment assumed that plaintiff had the exertional capacity for medium work.

pairments significantly limit the employment opportunities otherwise available to her.

